JUDGE CAPRONI

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE UNITED STATES OF AMERICA
*ex rel.* ELIZABETH W. MOORE

    and

STATE OF ARKANSAS
*ex rel.* ELIZABETH W. MOORE

    and

STATE OF CALIFORNIA
*ex rel.* ELIZABETH W. MOORE

    and

STATE OF CONNECTICUT
*ex rel.* ELIZABETH W. MOORE

    and

STATE OF COLORADO
*ex rel.* ELIZABETH W. MOORE

    and

STATE OF DELAWARE
*ex rel.* ELIZABETH W. MOORE

    and

DISTRICT OF COLUMBIA
*ex rel.* ELIZABETH W. MOORE

    and

STATE OF FLORIDA
*ex rel.* ELIZABETH W. MOORE

    and

STATE OF GEORGIA
*ex rel.* ELIZABETH W. MOORE

    and

19 CV 03939

Civ. No.

FILED
U.S. DISTRICT COURT
2019 MAY -2 PM 12: 23
S.D. OF N.Y.

**ORIGINAL**
**COMPLAINT UNDER**
**FEDERAL AND STATE**
**FALSE CLAIM ACTS**

**FILED *IN CAMERA* AND**
**UNDERSEAL PURSUANT**
**TO 31 U.S.C. § 3730(b)(2)**

**DO NOT ENTER IN**
**PACER**

**DO NOT PUT IN PRESS**
**BOX**

STATE OF HAWAII
*ex rel.* ELIZABETH W. MOORE

    and

STATE OF ILLINOIS
*ex rel.* ELIZABETH W. MOORE

    and

STATE OF INDIANA
*ex rel.* ELIZABETH W. MOORE

    and

STATE OF LOUISIANA
*ex rel.* ELIZABETH W. MOORE

    and

STATE OF MARYLAND
*ex rel.* ELIZABETH W. MOORE

    and

COMMONWEALTH OF MASSACHUSETTS
*ex rel.* ELIZABETH W. MOORE

    and

STATE OF MICHIGAN
*ex rel.* ELIZABETH W. MOORE

    and

STATE OF MINNESOTA
*ex rel.* ELIZABETH W. MOORE

    and

STATE OF MONTANA
*ex rel.* ELIZABETH W. MOORE

    and

STATE OF NEVADA
*ex rel.* ELIZABETH W. MOORE

**ORIGINAL COMPLAINT UNDER FEDERAL AND STATE FALSE CLAIM ACTS**

**FILED *IN CAMERA* AND UNDERSEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**PACER**

**DO NOT PUT IN PRESS BOX**

and                                                    :
                                                       :
STATE OF NEW HAMPSHIRE                                  :
*ex rel.* ELIZABETH W. MOORE                           :
                                                       :
    and                                                :
                                                       :       **ORIGINAL**
STATE OF NEW JERSEY                                     :       **COMPLAINT UNDER**
*ex rel.* ELIZABETH W. MOORE                           :       **FEDERAL AND STATE**
                                                       :       **FALSE CLAIM ACTS**
    and                                                :
                                                       :       **FILED *IN CAMERA* AND**
STATE OF NEW MEXICO                                     :       **UNDERSEAL PURSUANT**
*ex rel.* ELIZABETH W. MOORE                           :       **TO 31 U.S.C. § 3730(b)(2)**
                                                       :
    and                                                :       **DO NOT ENTER IN**
                                                       :       **PACER**
STATE OF NEW YORK                                       :
*ex rel.* ELIZABETH W. MOORE                           :       **DO NOT PUT IN**
                                                       :       **PRESS BOX**
    and                                                :
                                                       :
STATE OF NORTH CAROLINA                                 :
*ex rel.* ELIZABETH W. MOORE                           :
                                                       :
    and                                                :
                                                       :
STATE OF OKLAHOMA                                       :
*ex rel.* ELIZABETH W. MOORE                           :
                                                       :
    and                                                :
                                                       :
STATE OF RHODE ISLAND                                   :
*ex rel.* ELIZABETH W. MOORE                           :
                                                       :
    and                                                :
                                                       :
STATE OF TENNESSEE                                      :
*ex rel.* ELIZABETH W. MOORE                           :
                                                       :
    and                                                :
                                                       :
STATE OF TEXAS                                          :
*ex rel.* ELIZABETH W. MOORE                           :
                                                       :
    and                                                :
                                                       :

STATE OF UTAH                         :
*ex rel.* ELIZABETH W. MOORE         :
                                     :
        and                          :
                                     :
STATE OF VERMONT                     :
*ex rel.* ELIZABETH W. MOORE         :
                                     :
        and                          :
                                     :
COMMONWEALTH OF VIRGINIA             :      **ORIGINAL**
*ex rel.* ELIZABETH W. MOORE         :      **COMPLAINT UNDER**
                                     :      **FEDERAL AND STATE**
        and                          :      **FALSE CLAIM ACTS**
                                     :
STATE OF WASHINGTON                  :      **FILED *IN CAMERA* AND**
*ex rel.* ELIZABETH W. MOORE         :      **UNDERSEAL PURSUANT**
                                     :      **TO 31 U.S.C. § 3730(b)(2)**
        and                          :
                                     :      **DO NOT ENTER IN**
STATE OF WISCONSIN                   :      **PACER**
*ex rel.* ELIZABETH W. MOORE         :
                                     :      **DO NOT PUT IN PRESS**
        and                          :
                                     :
DOE STATES 1-18                      :
*ex rel.* ELIZABETH W. MOORE         :
                                     :
        **Plaintiffs,**               :
        v.                           :
                                     :
THE CENTER FOR AUTISM AND            :
RELATED DISORDERS INC.               :
21600 Oxnard Street                  :
Woodland Hills, CA 91367             :
                                     :
    **SERVE ON REGISTERED AGENT:**    :
    Donald J. Palazzo                 :
    31248 Oak Crest Drive, Suite 100  :
    Westlake Village, CA 91361        :
                                     :
        **Defendant.**                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## TABLE OF CONTENTS

I.      NATURE OF THE ACTION ..................................................................... 2

II.     JURISDICTION AND VENUE ................................................................ 3

III.    PARTIES .................................................................................................. 4

        A.  Plaintiffs ........................................................................................ 4

        B.  Relator ............................................................................................ 5

        C.  Defendant ....................................................................................... 6

IV.     THE LAW ................................................................................................ 7

        A.  Federal and State False Claim Statutes ......................................... 7

        B.  Insurance Frauds Prevention Acts ................................................. 9

V.      THE MEDICAID PROGRAM AND
        OTHER FEDERAL PAYER PROGRAMS ............................................ 12

VI.     DEFENDANT'S WRONGFUL CONDUCT .......................................... 17

VII.    DAMAGES ............................................................................................. 25

COUNT I: VIOLATIONS OF THE FALSE CLAIMS ACT ............................... 26

COUNT II: VIOLATIONS OF THE FALSE CLAIMS ACT .............................. 27

COUNT III: VIOLATIONS OF THE FALSE CLAIMS ACT ............................. 28

PRAYER AS TO COUNTS I-III .......................................................................... 29

COUNT IV: UNJUST ENRICHMENT ................................................................ 30

PRAYER AS TO COUNT IV ............................................................................... 31

COUNT V: VIOLATIONS OF THE ARKANSAS MEDICAID FCA ............................ 31

COUNT VI: VIOLATIONS OF THE CALIFORNIA FCA ................................. 34

COUNT VII: VIOLATIONS OF THE CALIFORNIA INSURANCE FRAUDS
PREVENTION ACT .............................................................................................. 37

i

COUNT VIII: VIOLATIONS OF THE COLORADO MEDICAID FCA ........................40

COUNT IX: VIOLATIONS OF THE CONNECTICUT FCA FOR MEDICAL
ASSISTANCE PROGRAMS ............................................................................................42

COUNT X: VIOLATIONS OF THE DELAWARE FALSE CLAIMS AND
REPORTING ACT ............................................................................................................45

COUNT XI: VIOLATIONS OF THE DISTRICT OF COLUMBIA PROCUREMENT
REFORM AMENDMENT ACT ........................................................................................48

COUNT XII: VIOLATIONS OF THE FLORIDA FCA .....................................................51

COUNT XIII: VIOLATIONS OF THE GEORGIA STATE FALSE MEDICAID
CLAIMS ACT ...................................................................................................................53

COUNT XIV: VIOLATIONS OF THE HAWAII FCA ......................................................56

COUNT XV: VIOLATIONS OF THE ILLINOIS FCA ......................................................58

COUNT XVI: VIOLATIONS OF THE ILLINOIS INSURANCE CLAIMS FRAUD
PREVENTION ACT ..........................................................................................................61

COUNT XVII: VIOLATIONS OF THE INDIANA FALSE CLAIMS AND
WHISTLEBLOWER PROTECTION ACT .......................................................................64

COUNT XVIII: VIOLATIONS OF THE IOWA FCA .......................................................66

COUNT XIX: VIOLATIONS OF THE LOUISIANA MEDICAL ASSISTANCE
PROGRAMS INTEGRITY LAW .....................................................................................69

COUNT XX: VIOLATIONS OF THE MARYLAND FALSE HEALTH
CLAIMS ACT ...................................................................................................................71

COUNT XXI: VIOLATIONS OF THE MASSACHUSETTS FCA..................................74

COUNT XXII: VIOLATIONS OF THE MICHIGAN MEDICAID FCA .........................77

COUNT XXIII: VIOLATIONS OF THE MINNESOTA FCA ..........................................80

COUNT XXIV: VIOLATIONS OF THE MONTANA FCA .............................................82

COUNT XXV: VIOLATIONS OF THE NEVADA FCA ..................................................85

COUNT XXVI: VIOLATIONS OF THE NEW HAMPSHIRE FCA................................88

COUNT XXVII: VIOLATIONS OF THE NEW JERSEY FCA ......................................91

COUNT XXVIII: VIOLATIONS OF THE NEW MEXICO MEDICAID FCA ..............94

COUNT XXIX: VIOLATIONS OF THE NEW YORK FCA ..........................................97

COUNT XXX: VIOLATIONS OF THE NORTH CAROLINA FCA..............................99

COUNT XXXI: VIOLATIONS OF THE OKLAHOMA MEDICAID FCA ................102

COUNT XXXII: VIOLATIONS OF THE RHODE ISLAND STATE FCA..................105

COUNT XXXIII: VIOLATIONS OF THE TENNESSEE MEDICAID FCA................108

COUNT XXXIV: VIOLATIONS OF THE TEXAS MEDICAID FRAUD
PREVENTION LAW .................................................................................................111

COUNT XXXV: VIOLATIONS OF THE UTAH FCA .................................................114

COUNT XXXVI: VIOLATIONS OF THE VERMONT FCA ......................................117

COUNT XXXVII: VIOLATIONS OF THE VIRGINIA FRAUD AGAINST
TAXPAYERS LAW ...................................................................................................120

COUNT XXXVIII: VIOLATIONS OF THE WASHINGTON STATE MEDICAID
FRAUD FCA .............................................................................................................123

COUNT XXXIX: VIOLATIONS OF THE WISCONSIN FALSE CLAIMS FOR
MEDICAL ASSISTANCE ACT ...............................................................................126

***THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK***

## ORIGINAL COMPLAINT

**COMES NOW**, through the undersigned counsel, Relator Elizabeth W. Moore, on behalf of herself, the United States of America ("United States"), and the States of Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Utah, Vermont, Washington, and Wisconsin, the Commonwealths of Massachusetts and Virginia, the District of Columbia, and Doe States 1-18, brings this *qui tam* action under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA") and similar state laws to recover monetary damages, civil penalties, and all other remedies for violations of the Federal healthcare programs, including, but not limited to, Medicaid, the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS/TRICARE"), the Veterans Administration, and the Federal Employees Health Benefits Program (collectively, "Federal Payer Programs"), related to the submission of false and fraudulent claims for the treatment of patients with Autism Spectrum Disorder. Relator also brings this action on behalf of herself and the States of California and Illinois to recovery statutory damages, civil penalties and other monetary relief for violations of the California Insurance Frauds Prevention Act, CAL. INS. CODE § 1871 *et seq.*, and the Illinois Insurance Claims Fraud Prevention Act, 740 ILL. COMP. STAT. ANN. § 92/1 *et seq.*, related to the submission of false and fraudulent claims to private insurers.

Relator hereby alleges as follows:

1

## I.    NATURE OF THE ACTION.

1.      This is a *qui tam* action under the federal and state False Claims Acts, the California Insurance Frauds Prevention Act, and the Illinois Insurance Claims Fraud Prevention Act. The False Claims Act was enacted in 1863 in response to "widespread corruption and fraud in the sales of supplies and provisions to the union government during the Civil War." 132 CONG. REC. H9382-03 (daily ed. Oct. 7, 1986) (statement of Rep. Glickman). The law allows a private person with knowledge of a fraud to bring an action in federal district court for herself and for the United States and States and to share in any recovery. The party is known as a Relator, and the action that a Relator brings is called a *qui tam*.

2.      In this *qui tam*, Relator alleges that Defendant Center for Autism and Related Disorders, Inc. ("CARD" or "Defendant") knowingly made and caused to be made false statements and claims to the United States, the States, and private payers for Applied Behavioral Analysis therapy services related to the treatment of children with Autism Spectrum Disorder that either misrepresented the services provided or the services were not provided at all. Defendant double billed for multiple and overlapping therapists performing the same service for the same patient at the same time; upcoded charges by billing for "supervision" when a qualified autism services provider was not present; and billed for unallowable indirect services and telephonic or video therapy services. Defendant's fraudulent overbilling scheme – which it concealed through false coding in claims for payment – maximized reimbursements, while depriving children of the medically necessary therapy services they need.

2

3.      Defendant is one of the largest providers of treatment for children with Autism Spectrum Disorder in the United States.  As a result of Defendant's fraudulent course of conduct, as alleged herein, the United States, the States, private insurers, and – most importantly – children with autism have been and continue to be substantially damaged.

4.      This Complaint has been filed *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2).  It will not be served on Defendant until the Court so orders.  A disclosure of substantially all material evidence and information Relator possesses has been served on the Attorney General of the United States and the United States Attorney for the Southern District of New York pursuant to 31 U.S.C. § 3730(b)(2) and Fed. R. Civ. P. 4.

## II.      JURISDICTION AND VENUE.

5.      This Court possesses subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. §§ 3730 and 3732 because Relator seeks remedies on behalf of the United States for Defendant's violations of 31 U.S.C. § 3729, some of which occurred in the Southern District of New York, and Defendant transacts substantial business within the Southern District of New York.

6.      This Court may exercise personal jurisdiction over Defendant under N.Y. C.P.L.R. § 302(a).

7.      This Court has pendant jurisdiction over the State claims pursuant to 31 U.S.C. § 3732(b) and 31 U.S.C. § 3730(e).

8.      This Complaint has been timely filed within the period prescribed by 31 U.S.C. § 3731(b).  The allegations and transactions set forth in this Complaint have not been publicly disclosed prior to filing, in accordance with 31 U.S.C. § 3730(e).

9.      Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b) and (c) because the Defendant resides, transacts business, and/or is qualified to do business in this District.  In addition, during the period challenged by this action, Defendant committed the acts proscribed by the False Claims Act in this judicial District.

### III.    PARTIES.

#### A. Plaintiffs.

10.      Plaintiff United States of America brings this action by and through its administrative agency, the United States Department of Health and Human Services, Centers for Medicare & Medicaid Services ("CMS"), which is responsible for the administration of all Federal health care programs.

11.      The States of Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Michigan, Minnesota, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Utah, Vermont, Washington, and Wisconsin, the Commonwealths of Massachusetts and Virginia, and the District of Columbia are named as Plaintiffs pursuant to the Court's pendant jurisdiction under 31 U.S.C. § 3732(b) with respect to the related States' false claim statutes.

12.      The States of California and Illinois are named as Plaintiffs pursuant to the Court's pendant jurisdiction under 31 U.S.C. § 3732(b), and/or the Court's supplemental

jurisdiction under 28 U.S.C. § 1367 with respect to the related claims brought for violations of the California Insurance Frauds Prevention Act and the Illinois Insurance Claims Fraud Prevention Act.

13.    Additionally, Plaintiff Doe States 1-18 include Alabama, Alaska, Arizona, Idaho, Kansas, Kentucky, Maine, Mississippi, Missouri, Nebraska, North Dakota, Ohio, Oregon, Pennsylvania, South Carolina, South Dakota, West Virginia, and Wyoming. Doe States 1-18 include those that enact false claims act statutes with *qui tam* provisions subsequent to the filing of this complaint.

**B.  Relator.**

14.    Relator Elizabeth W. Moore is a Board Certified Behavior Analyst. She graduated from Southwestern University with a Bachelor of Arts in May 2004, and from Texas State University with a Master of Education (with a concentration in Autism and Applied Behavior Analysis) in December 2009. Relator was employed by Defendant as the Clinical Supervisor in Elizabethtown and Louisville, Kentucky from November 2016 to October 2018. As a Board Certified Behavior Analyst and Clinical Supervisor, Relator's employment responsibilities included, for example, supervising in-home and center-based Applied Behavioral Analysis therapy services, monitoring compliance with Federal and State laws and regulations, and coordinating community outreach and business development efforts on behalf of Defendant. She maintains active certifications with both the Behavior Analyst Certification Board and the Kentucky Applied Behavior Analyst Licensing Board. Relator also was previously employed by Defendant as a Registered Behavior Therapist in Austin, Texas from May 2008 to July 2009. In addition to her experience with Defendant, Relator has extensive experience as a Board Certified

Behavior Analyst for other organizations, including serving as the Director of Autism Services at the Home of the Innocents, a nonprofit pediatric shelter in Louisville, Kentucky.

15.     By virtue of her position and responsibilities with Defendant, her routine interaction with others employed by Defendant, and her extensive experience providing Applied Behavioral Analysis therapy services to children with Autism Spectrum Disorder, Relator became aware of Defendant's fraudulent conduct, as alleged herein. Pursuant to 31 U.S.C. § 3730(e)(4)(B), Relator is the "original source" of the information provided herein regarding Defendant's illegal conduct in violation of Federal and State laws. She has direct and independent knowledge of the allegations set forth herein. Relator states that the information concerning Defendant's misconduct was not disclosed publicly prior to her disclosure to the United States, the States, and private payers.

### C. Defendant.

16.     Defendant Center for Autism and Related Disorders, Inc. ("Defendant" or "CARD")[1] is one of largest providers of Applied Behavioral Analysis therapy for children with Autism Spectrum Disorder in the United States. CARD currently operates 331 locations in 37 states, including New York.[2] In or around April 2018, Blackstone Group LP ("Blackstone Group") (NYSE: BX) acquired CARD for an undisclosed amount. Blackstone Group is headquartered at 345 Park Avenue, New York, New York 10154.

---

[1]     Center for Autism and Related Disorders, Inc. incorporated in the State of California on June 6, 1997. On or about January 7, 2016, CARD registered as a limited liability company in California.
[2]     In addition to its locations in the State of New York, CARD maintains clinics in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Vermont Virginia, Washington, and Wisconsin.

17.     CARD provides Applied Behavioral Analysis therapy to children through Clinical Supervisors and Behavior Therapists, amongst other staff employed by Defendant.  Most Clinical Supervisors, such as Relator, are Board Certified Behavior Analysts, who hold graduate-level certifications in behavior analysis.  Defendant does not require Behavior Therapists, who administer patient treatment plans, to obtain certifications.  But some Behavior Therapists are Board Certified Autism Technicians ("BCAT").  Even fewer are Registered Behavior Technicians ("RBT").

18.     CARD is organized and existing under the laws of California as a limited liability company, with its principal place of business located at 21600 Oxnard Street, Woodland Hills, California 91367.  It may be served through its registered agent, Donald J. Palazzo at 31248 Oak Crest Drive, Suite 100, Westlake Village, California 91361.

## IV.     THE LAW.

### A. Federal and State False Claim Statutes.

19.     The False Claims Act, 31 U.S.C. §§ 3729-3733, provides, *inter alia*, that any person who (1) knowingly presents, or causes to be presented, to the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim made to the United States; or (3) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States for a civil money penalty plus treble damages. 31 U.S.C. § 3729(a)(1)(A)-(B), (G).

7

20.    The False Claims Act also provides that any person who conspires to violate any provision of the Act is liable to the United States for a civil money penalty plus treble damages. 31 U.S.C. § 3729(a)(1)(C).

21.    The terms "knowing" and "knowingly" are defined to mean "that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A)(i)-(iii). These terms "require no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(B).

22.    The term "claim" is defined to mean "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (1) is presented to an officer, employee, or agent of the United States; or (2) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (a) provides or has provided any portion of the money or property requested or demanded; or (b) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded . . . ." 31 U.S.C. § 3729(b)(2)(A)(i)-(ii).

23.    The term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. 31 U.S.C. § 3729(b)(4).

24.    The States have enacted false claims statutes, the provisions of which substantially mirror the Federal FCA provided in preceding paragraphs. Relator asserts

claims under the statutes enacted by the States for the State portion of Medicaid false claims as stated herein. Relator's disclosure of substantially all material evidence and information Relator possesses will be served upon State officials as required by State law.

**B. Insurance Frauds Prevention Acts.**

25.     The California Insurance Frauds Prevention Act ("CIFPA"), Cal. Ins. Code § 1871 *et seq.*, and the Illinois Insurance Claims Fraud Prevention Act ("IICFPA"), 740 Ill. Comp. Stat. Ann. § 92 *et seq.* are statutes designed to root out and put a stop to fraudulent activities in the insurance arena. Both statutes contain a *qui tam* provision, similar to that contained in the Federal and various state False Claims Acts. The statutes are premised on the idea that the costs of insurance fraud are ultimately passed on to consumers in the form of increased premiums, and the *qui tam* provisions are designed to promote more effective investigation, discovery, and prosecution of insurance frauds. *See* CAL. INS. CODE § 1871(a). The California statute explicitly references heath care fraud as one of the areas the statute is intended to target, finding that "[h]ealth care fraud causes losses in premium dollars and increases health care costs unnecessarily." *Id.* at § 1871(h)

26.     Defendant's fraudulent scheme as alleged by Relator herein violates the CIFPA and the IICFPA for claims submitted to private insurers.

27.     **California Insurance Frauds Prevention Act**. CIFPA creates civil liability for "[e]very person who violates any provision of this section or Section 549, 550, or 551 of the Penal Code shall be subject, in addition to any other penalties that may be prescribed by law, to a civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three

times the amount of each claim for compensation, as defined in Section 3207 of the Labor Code or pursuant to a contract of insurance." CAL. INS. CODE § 1871(b).

28.    CAL. INS. CODE Section 1871(a) provides that "It is unlawful to knowingly employ runners, cappers, steerers, or other persons to procure clients or patients or to perform or obtain services or benefits pursuant to Division 4... of the Labor Code or to procure clients or patients to perform or obtain services under a contract of insurance or that will be the basis for a claim against an insured individual or his or her insurer."

29.    CAL. PENAL CODE § 550(b) states:

It is unlawful to do, or to knowingly assist or conspire with any person to do, any of the following:

(1)    Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

(2)    Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

(3)    Conceal, or knowingly fail to disclose the occurrence of, an event that affects any person's initial or continued right or entitlement to any insurance benefit or payment, or the amount of any benefit or payment to which the person is entitled.

(4)    Prepare or make any written or oral statement, intended to be presented to any insurer or producer for the purpose of obtaining a motor vehicle insurance policy, that the person to be the insured resides or is domiciled in this state when, in fact,

10

that person resides or is domiciled in a state other
than this state.

30.     The statute contains a *qui tam* provision that states "[a]ny interested person, including an insurer, may bring a civil action for violation of this section for the person and for the State of California…" CAL. INS. CODE § 1871.7(e)(1)

31.     **Illinois Insurance Claims Fraud Prevention Act**.  IICFPA states "[a] person who violates any provision of this Act, Section 17-8.5 or Section 10.5 of the Criminal Code of 1961 or the Criminal Code of 2012, or Article 46 of the Criminal Code of 1961 shall be subject… to a civil penalty…"). 740 ILL. COMP. STAT. ANN. 92/5(b).

32.     Section 92/5 states "it is unlawful to knowingly offer or pay any remuneration directly or indirectly, in cash or in kind, to induce any person to procure clients or patients to obtain services or benefits under a contract or insurance or that will be the basis for a claim against an insured person or the person's insurer…". 740 ILL. COMP. STAT. ANN. § 92/5.

33.     ILL. CRIM. CODE § 17-10.5(a) states:

(1)     A person commits insurance fraud when he or she knowingly obtains, attempts to obtain, or causes to be obtained, by deception, control over the property of an insurance company or self-insured entity by the making of a false claim or by causing a false claim to be made on any policy of insurance issued by an insurance company or by the making of a false claim or by causing a false claim to be made to a self-insured entity, intending to deprive an insurance company or self-insured entity permanently of the use and benefit of that property.

(2)     A person commits health care benefits fraud against a provider, other than a governmental unit or agency, when he or she knowingly obtains or attempts to obtain, by deception, health care benefits and that obtaining or attempt to obtain

11

> health care benefits does not involve control over
> property of the provider.

34.    "Deception," as further defined by statute, means knowingly to:

    (1)    Create or confirm another's impression which is false and which the offender does not believe to be true; or

    (2)    Fail to correct a false impression which the offender previously has created or confirmed; or

    (3)    Prevent another from acquiring information pertinent to the disposition of the property involved; or

    (4)    Sell or otherwise transfer or encumber property, failing to disclose a lien, adverse claim, or other legal impediment to the enjoyment of the property, whether such impediment is or is not valid, or is or is not a matter of official record; or

    (5)    Promise performance which the offender does not intend to perform or knows will not be performed.

720 ILL. COMP. STAT. ANN. § 5/15-4.

35.    Under the IICFPA, "[a]n interested person, including an insurer, may bring a civil action for a violation of these Act for the person and for the State of Illinois…." 740 ILL. COMP. STAT. ANN. § 92/15(a).

## V.    THE MEDICAID PROGRAM AND OTHER FEDERAL PAYER PROGRAMS.

36.    Title XIX of the Social Security Act ("Medicaid" or the "Medicaid Program") authorizes grants to States for medical assistance to children and blind, aged, and disabled individuals whose income and resources are not sufficient to meet the costs of necessary medical care. 42 U.S.C. § 1396; 42 C.F.R. § 430.0; *see* 42 U.S.C. §§ 1396-1396v. The Medicaid Program is jointly funded by the Federal Government and

12

participating States.  The amount of Federal funding in a State's program (Federal Financial Participation) is determined by a statutory formula set forth in 42 U.S.C. §§ 1396b(a) and 1396d(b).  A State that elects to participate in the Medicaid Program must establish a plan for providing medical assistance to qualified beneficiaries.  42 U.S.C. §1396a(a)-(b); *see* 42 C.F.R. § 430(A) & (B); CMS State Medicaid Manual § 13025.  In exchange, the Federal Government, through CMS, pays to the State the federal portion of the expenditures made by the State to providers, and ensures that the State complies with minimum standards in the administration of the Medicaid Program.  42 U.S.C. §§ 1396, 1396a, and 1396b.

37.    Individuals or entities that provide services to Medicaid beneficiaries submit claims for payment to the Medicaid agency or its local delegate agency. *See* 42 C.F.R. § 430.0. Payments are made based on types and ranges of services, payment levels for services, and administrative and operating procedures established by the State in accordance with Federal laws, statutes and rules.  *Id.*

38.    The Medicaid Program provides healthcare coverage for the Applied Behavioral Analysis ("ABA") therapy treatment of children with Autism Spectrum Disorder ("ASD") through a variety of authorities under the Social Security Act, including Section 1905(a)(6) (services of other licensed practitioners; section 1905(a)(13)(c) (preventative services), and Section 1905(a)(1) (therapy services).  *See* 42 U.S.C. § 1396d(a).

39.    In addition, states must cover services for children consistent with the provisions at Section 1905(a)(4)(B) for Early and Periodic Screening, Diagnostic and Treatment services.  *See* 42 U.S.C. § 1396d(a)(4)(B)] of the Social Security Act for Early

and Periodic Screening, Diagnostic and Treatment Services ("EPSDT"). *See* Centers for

Medicaid and Chip Services Informational Bulletin, "Clarification of Medicaid Coverage

of Services to Children with Autism" (July 7, 2014).

40.    The Medicaid Program also covers services related to ASD under Section

1915(c) (Home and Community-based Services waiver programs), Section 1915(i) (State

Plan Home and Community-based Services), and Section 1115 (Research and

Demonstration Programs). *See* 42 U.S.C. § 1396n(c) and (i); 42 U.S.C. § 1315. For

example, New York covers treatment for children with ASD under numerous

Comprehensive Home and Community-Based Services Section 1915(c) Waivers, which

are administered by Office for People With Developmental Disabilities; and California

provides coverage for behavioral health treatment, including ABA, for children based on

medical necessity, under California State Plan Amendment 14-026 (effective July 7,

2014).

41.    The Medicaid Program generally requires prior authorization for all

services and treatment plans to be administered to children with ASD. For example, in

California, behavioral health treatment "services are provided under a prior authorized

behavioral treatment plan that has measurable goals over a specified timeline for the

specific patient being treated and is developed by a qualified autism service provider",

which must be reviewed "no less than once every six months . . . ." *See* California State

Plan Amendment 14-026 (effective July 7, 2014). As a general matter, "[s]ervices

provided without prior authorization shall not be considered for payment or

reimbursement . . . ." *Id.*

14

42.     The United States also provides reimbursement for medical care under other health care programs:

    a.     The Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS") (presently entitled "TRICARE"), 10 U.S.C. §§ 1071-1106, is a federally-funded program administered by the Department of Defense. TRICARE/CHAMPUS provides medical benefits to certain active duty service members and their spouses and unmarried children, certain retired service members and their spouses and unmarried children, and reservists called to duty and their spouses and unmarried children. 32 C.F.R. § 199 *et seq.* TRICARE pays for its beneficiaries' medical procedures alleged herein.

    b.     CHAMPVA is a healthcare program administered by the United States Department of Veterans Affairs for families of veterans with 100-percent service-connected disabilities. CHAMPVA pays for its beneficiaries' medical procedures alleged herein.

    c.     The Federal Employees Health Benefits Program ("FEHBP") provides health care coverage for qualified federal employees and their dependents. FEHBP pays for its beneficiaries' medical procedures alleged herein.

43.     Other Federal Payer Programs provide similar coverage for ASD treatments. *See, e.g.*, FEHB Program Carrier Letter No. 2016-03, *Federal Employees Health Benefits Program Call Letter* (Feb. 26, 2016) ("OPM has encouraged FEHB plans to offer ABA benefits for children with autism spectrum disorder since 2013. . . . [F]or the 2017 plan year, carriers may no longer exclude ABA for the treatment of Autism Spectrum Disorder (ASD)"); TRICARE Operations Manual 6010.59-M, Apr. 1, 2015, at

Ch. 18, Sect. 4 ("The Comprehensive Autism Care Demonstration . . . provides TRICARE reimbursement for Applied Behavioral Analysis (ABA) services to TRICARE eligible beneficiaries diagnosed with Autism Spectrum Disorder (ASD).").

44.    CMS and other payers limit reimbursement for ABA therapy services provided to a patient to a single qualified provider.  Consistent with CMS's Informational Bulletin, the American Medical Association ("AMA") published Current Procedural Terminology ("CPT") Category III Adaptive Behavior Assessment and Treatment codes and guidelines in January and March 2014, for implementation on July 1, 2014, applicable to the treatment of children with ASD.  Relevant to Defendant's fraudulent course of conduct, the codes developed by the AMA must "be reported by a single provider (although behavior analysis services are often provided by more than one individual [eg, behavioral analyst and technicians], only the physician or other qualified health care professional [eg, behavioral analyst] bills for these services) . . . ." American Medical Association, *CPT Assistant*, vol. 24, issue 6 (June 2014) ("When more than one technician is present with the patient, codes . . . are based on a single technician's face-to-face time with the patient and not the combined time of multiple technicians.").

45.    Medicaid plans generally require treatment time to be billed based on a single provider's time with the patient, not the combined time of multiple providers. Significantly, Medicaid plans nationwide developed and implemented substantially similar requirements related to billing and reimbursement.  For example, United Behavioral Health, which administers Medicaid plans in California, makes clear that "when supervision is provided, [the provider is] reimbursed for the service provided not for the people present, so the entire team would not be covered individually in the

billing." Moreover, "[t]eam meetings are covered only as supervision if the member, the supervisor and the paraprofessional are present. . . . Only the supervision code would be billed for the entire time spent instead of the number of people in the meeting." *See* United Behavioral Health d/b/a OptumHealth Behavioral Solutions of California, Frequently Asked Questions, Autism/Applied Behavior Analysis. This is to ensure that, for example, the patient receives the number of hours approved as medically necessary, and not for the number of providers present in each session. In addition, many plans specifically prohibit billing for indirect therapy, indirect supervision, training, or telephonic or video therapy.

## VI.    **DEFENDANT'S WRONGFUL CONDUCT.**

76.    Relator Elizabeth W. Moore is a Board Certified Behavior Analyst. She graduated from Southwestern University with a Bachelor of Arts (English) in May 2004, and from Texas State University with a Master of Education (with a concentration in Autism and Applied Behavior Analysis) in December 2009. Relator was employed by Defendant as the Clinical Supervisor in Elizabethtown and Louisville, Kentucky from November 2016 to October 2018. As a Board Certified Behavior Analyst and Clinical Supervisor, Relator's employment responsibilities included, for example, supervising in-home and center-based ABA therapy services, monitoring compliance with Federal and State laws and regulations, and coordinating community outreach and business development efforts on behalf of Defendant. Relator maintains active certifications with both the Behavior Analyst Certification Board ("BACB") (no. 1-10-6942) and the Kentucky Applied Behavior Analyst Licensing Board (no. 101566).

77.     By virtue of her position and responsibilities as a Board Certified Behavior Analyst and Clinical Supervisor, as well as her extensive experience and expertise related to ABA therapy and treating children with ASD, Relator was ideally situated to investigate and uncover the fraudulent conduct alleged herein.   Relator routinely interacted with other employees throughout the country.   She has personal knowledge that Defendant has uniform treatment and billing procedures for its clinics nationwide.   This has conferred upon Relator direct and independent knowledge of Defendant's fraudulent conduct as to specific patients and has enabled her to discover and investigate the systemic and illegal practices of Defendant, as alleged herein.

78.     ASD is a developmental disability that can cause significant social, communication, and behavioral challenges.   ASD collectively refers to a number of conditions, including autism, pervasive developmental disorder not otherwise specified, and Asperger syndrome.   The Centers for Disease Control and Prevention ("CDC") estimates that one in 59 children has been identified with ASD.   Although there is no cure for ASD, early intervention treatment services have been shown to improve a child's physical and mental development.   In 2011, the CDC estimated the total cost per year for children with ASD in the United States to be between $11.5 billion and $60.9 billion. Not surprisingly, average medical expenditures for children with ASD are significantly higher – 4.1 to 6.2 times higher – than for children without ASD.   *See* Centers for Disease Control and Prevention, "Data & Statistics on Autism Spectrum Disorder", *available at* https://www.cdc.gov/ncbddd/autism/data.html.

79.     Defendant is one of the largest providers of ABA therapy treatment to children diagnosed with ASD.   Beginning at least in 2014 to present, Defendant

knowingly and intentionally overbilled Federal and private payers – as much as four times – for ABA therapy services provided to children with ASD. To facilitate this scheme, Defendant billed for services based on the number of providers present – including for multiple and overlapping providers present in a single session – rather than for the services provided; billed for "supervision" when a qualified autism services provider was not present; and billed for unallowable indirect services and telephonic or video therapy services. Because treatment plans generally are based on the hours of therapy provided, billing for multiple or overlapping providers effectively deprived children from received the amount of therapy approved as medically necessary.

80.    Defendant's senior management trained its employees to overbill and otherwise improperly bill Federal and private payers for ABA therapy services. Defendant routinely circulated e-mails and corporate-wide policies to employees regarding its unlawful billing practices. By way of example, on January 11, 2018, Tiffany Tegeler (Operations Manager) instructed employees to bill for "overlapping" time for therapists and trainees in order to, for example, "mak[e] up for low hours"; on February 2, 2018, Cindy Ung (Compliance Coordinator) stated that "we should be billing as much as we can" in reference to Defendant's corporate-wide policy regarding "[b]illable training overlaps" and instructed Relator to "[p]lease schedule trainees for billable overlaps for cases that he or she are assigned to go onto"; and, on the same day, Sienna Greener-Wooten (Managing Supervisor) further replied that "we have nothing in writing from Anthem saying no overlaps".

81.    Defendant trained employees regarding justifications for overbilling, including that billing overlaps were for the "benefit of the PATIENT and his/her program

and not just for the benefit of the THERAPIST"; or that billing overlaps were medically necessary. Defendant's purported justifications were knowingly false.

82.    In order to enforce its billing and treatment practices, Defendant pressured and incentivized employees to maximize their billable hours with bonuses and other rewards. According to Defendant's senior management, an employee's "bonus amount is controlled by the number of billable hours worked. Supervisors billing over 120 hours per month will receive a significantly larger bonus than supervisors billing less." Moreover, Defendant requires therapists to maintain a minimum number of billable hours per week for three months to maintain their benefits.

83.    Relator raised concerns and objected to Defendant's billing practices beginning in or around January 2018 and continuing until her departure in October 2018. By way of example, Relator advised Defendant that "Anthem uses T Codes, and we cannot bill 2 therapists at the same time; this results in billing that makes it appear that the patient received more hours of service that he actually did."

84.    Moreover, in the course of her employment, Relator discovered that senior management maintained an active list of targeted plans for overbilling, which contains entries for 108 plans from every state in which Defendant operates. Defendant designated 80 plans, which include Federal payers, as targets for overbilling. Relator was informed that target payers should be overbilled until the payer discovered the practice. Defendant maintains this list on its intranet as a reference to providers.

85.    Relator's direct experience and her review and analysis of Defendant's electronic records demonstrate a systemic practice of billing for false and fraudulent claims. *First,* Relator identified 398 examples of overbilling from 13 states, including

20

175 examples of overbilling the Medicaid Program (including 92 instances of overbilling in specific states, including California, Colorado, Louisiana, Massachusetts, Michigan, New Mexico, Nevada, Virginia, Washington, and Texas); 18 examples of overbilling the FEBP; and 205 examples of overbilling private payers (including 126 examples in California). **Second,** Relator identified 14 examples of improperly billing payers for Telehealth services in California and Kentucky, which include providing ABA services by telephone or video. Similarly, based on Relator's experience with Defendant, Relator has knowledge of Defendant's improper TRICARE billing practices related to Telehealth services. Significantly, Relator's examples include billing as many as **nine** providers for a single appointment.[3] Examples of Defendant's overbilling include, but are not limited to, the following:

     a.     Anthem Blue Cross of California authorized 22 hours and 1 minute of therapy for Patient 40 during the week of August 19, 2018. Defendant provided only 15 hours and 58 minutes of therapy to Patient 40, but billed Anthem for 22 hours and 12 minutes, effectively depriving the patient of 25 percent of his prescribed therapy time.

     b.     On September 4, 2018, Defendant billed Medi-Cal for three different therapists for a single appointment with Patient 9 in San Jose, California. The first therapist, Lizette Ceja Campos, was a trainee who was taking her training field examination; the second therapist, Robert Perez Jr., was conducting the training field examination; and the third therapist, Elizabeth Cortez was supervising the appointment. Defendant billed Medi-Cal for all three therapists.

---

[3]     Relator has produced an overbilling spreadsheet as Exhibit A to Relator's material disclosure statement, which is hereby incorporated fully herein by reference.

c.     On July 18, 2018, Defendant billed Aetna Health for two therapists present at the same appointment with Patient 73 in California. Defendant billed the first therapist, Alexandra Behre-Collier, for therapy under the CPT code 0364T and 0365T from 12:00 p.m. to 2:30 p.m. and the second therapist, Gretel Cornell, for therapy using CPT code 0354T and 0365T from 12:00 p.m. to 2:30 p.m.

d.     On November 20, 2017, Defendant billed FEBP - Anthem BCBS of KY, for two therapists at the same appointment with Patient 38 in Louisville, Kentucky. Defendant billed the first therapist, Alyssa Holcomb, for therapy from 4:31 p.m. to 6:34 p.m. and billed the second therapist, Ashley Shaw, for supervision from 4:30 p.m. to 6:30 p.m.

e.     On June 11, 2018, Defendant billed Massachusetts Behavioral Health Partnership ("MBHP") for an overlapping therapist during two different appointments with Patient 57 in South Yarmouth, Massachusetts. Defendant billed the first therapist, Amy Slowey, from 12:00 p.m. to 1:44 p.m.; the second therapist, Megan Foster, from 1:44 p.m. to 3:34 p.m.; and the third therapist, Chelsey Georgoulis, from 1:30 p.m. 2:30 p.m., noting "[Overlap] with Megan and Amy – probed pecs phase 3b".

f.     On July 16, 2018, Defendant billed Behavioral Health Partner Network ("BHPN") for two overlapping appointments with Patient 77. Defendant billed the first therapist, Courtney Graham, from 8:30 a.m. to 1:00 p.m. and the second therapist for supervision via FaceTime from 10:00 a.m. to 11:00 a.m., even though BHPN expressly prohibits billing for FaceTime.

g.    On August 27, 2018, Defendant billed Blue Cross Blue Shield of Illinois for four overlapping appointments with Patient 69. Defendant billed the first therapist, Angelica Calascibetta, from 8:30 a.m. to 1:15 p.m.; the second therapist, Peter Oliveri, from 1:01 p.m. to 2:30 p.m., noting "ND drop in W/Fudia"; the third therapist, Fudia Jalloh, from 1:17 p.m. to 3:30 p.m.; and the fourth therapist, Elise Anderson, from 1:18 p.m. to 2:53 p.m., noting "AS-overlap". Defendant billed the payer for the time of the five therapists using CPT codes 0364T and 0365T.

h.    On September 12, 2018, Defendant billed Anthem HealthKeepers Plus, Virginia Medicaid, for two overlapping appointments with Patient 66. Defendant billed the first therapist, Teresa Daniels, from 3:30 p.m. to 5:00 p.m. and the second therapist from 3:37 p.m. to 4:37 p.m.

i.    On January 9, 2018, Defendant billed Louisiana Medicaid, administered by Molina, for five overlapping appointments with Patient 26. Defendant bill the first therapist, Valerie McDonald, from 8:35 a.m. to 11:30 a.m.; the second therapist, Billy Rush, from 8:35 a.m. to 10:00 a.m.; the third therapist, Chelsea Cating, from 11:10 a.m. to 12:30 p.m.; the fourth therapist, Shantae Allen, from 11:31 a.m. to 4:23 p.m.; and the fifth therapist, Stephanie Stelly, from 2:33 p.m. to 3:30 p.m., noting "drop in with Shantae". Defendant billed for the five therapists using CPT codes 0364T and 0365T.

j.    On September 13, 2018, Defendant billed Colorado Medicaid for three overlapping appointments with Patient 71. Defendant billed the first therapist, Kayla Gosselin, from 12:00 p.m. to 1:57 p.m.; the second therapist,

23

Adipt Scharma, from 12:00 p.m. to 1:30 p.m.; and the third therapist from 1:30 p.m. to 3:05 p.m.

      k.      On April 11, 2018, Defendant billed MassHealth/Massachusetts Medicaid, administered by Massachusetts Behavioral Health Partnership, for two overlapping appointments with Patient 56. Defendant billed the first therapist, Mikaila Enos, from 4:03 p.m. to 6:00 p.m. and the second therapist from 4:03 p.m. to 7:02 p.m.

      l.      On September 6, 2018, Defendant billed Blue Cross Blue Shield of New Mexico – Medicaid for nine overlapping appointments with Patient 33. Defendant billed the first therapist, Jheri Stelzer, from 8:29 a.m. to 10:29 a.m.; the second therapist, Leslie Palma, from 8:30 a.m. to 10:30 a.m.; the third therapist, Angela Ortiz, from 8:30 a.m. to 10:25 a.m.; the fourth therapist, Janira Cordova, from 8:30 a.m. to 10:30 a.m.; the fifth therapist, Elizabeth Bowers, from 10:00 a.m. to 10:30 a.m.; the sixth therapist, again Elizabeth Bowers, from 10:30 a.m. to 2:00 p.m.; the seventh therapist, again Jheri Stelzer, from 1:30 p.m. to 3:00 p.m.; the eighth therapist, Michelle Jefferson, from 2:00 p.m. to 4:00 p.m., noting "drop in with Jackie"; and the ninth therapist, Jacqueline Goerig, from 2:00 p.m. to 4:30 p.m. Defendant billed the nine therapists using CPT codes 0364T and 0365T.

      m.      On August 8, 2018, Defendant billed Nevada Medicaid for four overlapping appointments with Patient 29. Defendant billed the first therapist, Cheyenne Harry, from 12:00 p.m. to 2:00 p.m.; the second therapist, Lex Andrei Cecilio, from 1:00 p.m. to 2:00 p.m., noting "QA Cheyenne"; the third therapist,

Maryse Yamat, from 2:00 p.m. to 5:05 p.m.; and the fourth therapist, Lex Andrei Cecilio, from 2:00 p.m. to 3:00 p.m., noting "QA Maryse".

## VII.    DAMAGES.

86.    The United States and the States of Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Utah, Vermont, Washington, and Wisconsin, the Commonwealths of Massachusetts and Virginia, the District of Columbia, and Doe States 1-18 have suffered damages as a result of the acts and practices of Defendant, as described herein, in presenting, causing to be presented, and conspiring to present false and fraudulent claims, statements, and records to the United States for ABA therapy that were not eligible for reimbursement as a result of systemic overcharging by Defendant.

87.    Defendant's false statements were material to the decision of the United States and States to cover and reimburse Defendant for the services challenged herein.

88.    Defendant profited unlawfully from the payment of the false and fraudulent claims by the United States and States.

89.    Damages to the United States, the States, and the Federal Payer Programs are substantial.

90.    The States of California and Illinois have also suffered damage as a result of the acts and practices of Defendant, as described herein, in presenting or causing to be presented and conspiring to present false and fraudulent claims, statements, and records to private insurance companies.

## COUNT I
## VIOLATIONS OF THE FALSE CLAIMS ACT
### 31 U.S.C. § 3729(a)(1)(A)

91.     Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

92.     The False Claims Act, 31 U.S.C. § 3729(a)(1)(A), provides in relevant part that any person who:

> knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval . . .

> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . plus three times the amount of damages which the Government sustains because of the act of that person. . . .

93.     By virtue of the acts described herein, Defendant knowingly presented, or caused to be presented, false or fraudulent claims for payment of covered therapy services to which it was not entitled.  Defendant knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

94.     Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

95.     Unaware that Defendant submitted false statements to conceal its misconduct and falsely certified compliance with laws and regulations despite pervasive and substantial non-compliance, the United States paid and continues to pay the false

26

claims submitted for Defendant's therapy services. These claims would not have been paid but for Defendant's fraud and false statements.

96.    In reliance on the accuracy of Defendant's statements, records, data, representations, and certifications, the United States has paid said claims and has suffered financial losses as a result of these acts by Defendant.

## COUNT II
## VIOLATIONS OF THE FALSE CLAIMS ACT
## 31 U.S.C. § 3729(a)(1)(B)

97.    The Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

98.    The False Claims Act, 31 U.S.C. § 3729(a)(1)(B), provides in relevant part that any person who:

> knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . .

> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . plus three times the amount of damages which the Government sustains because of the act of that person. . . .

99.    By virtue of the acts described herein, Defendant knowingly presented, or caused to be presented, false or fraudulent records or statements material to false or fraudulent claims for payment of covered therapy services to which it was not entitled. Defendant knew that the records and statements were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the records and statements, or acted in reckless disregard for whether the records and statements were true or false.

100.    Each false or fraudulent record or statement material to a false or fraudulent claim for payment or reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

101.    Unaware that Defendant submitted false records or statements to conceal the its misconduct and falsely certified compliance with laws and regulations despite pervasive and substantial non-compliance, the United States paid and continues to pay the false claims submitted for Defendant's therapy services.  These claims would not have been paid but for Defendant's fraud and false statements.

102.    In reliance on the accuracy of Defendant's statements, records, data, representations, and certifications, the United States has paid said claims and has suffered financial losses as a result of these acts by Defendant.

**COUNT III**
**VIOLATIONS OF THE FALSE CLAIMS ACT**
**31 U.S.C. § 3729(a)(1)(C)**

103.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

104.    The False Claims Act, 31 U.S.C. § 3729(a)(1)(C), provides in relevant part that any person who:

> conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G) . . .
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . plus three times the amount of damages which the Government sustains because of the act of that person. . . .

28

105.    By virtue of the acts described herein, Defendant conspired to commit violations of 31 U.S.C. §§ 3729(a)(1)(A) and (B) by knowingly presenting, or causing to be presented, false or fraudulent claims for payment by knowingly making, using, or causing to be made or used, false records or statements material to false or fraudulent claims.  Defendant knew that these claims were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

106.    Unaware of the conspiracy to submit false records and/or statements to conceal its misconduct and falsely certified compliance with laws and regulations despite pervasive and substantial non-compliance, the United States paid and continues to pay the false claims submitted for Defendant's covered therapy services.  These claims would not have been paid but for Defendant's fraud and false statements.

107.    In reliance on the accuracy of Defendant's statements, records, data, representations, and certifications, the United States have paid said claims and have suffered financial losses as a result of these acts by Defendant.

### PRAYER AS TO COUNTS I-III

WHEREFORE, Relator prays that this District Court enter judgment on behalf of Relator and against Defendant in Counts I-III, respectively, as follows:

a.    Damages in the amount of three times the actual damages suffered by the United States Government as a result of each Defendant's conduct;

b.    Civil penalties against the Defendant, respectively, equal to not less than $5,000 and not more than $10,000, adjusted for inflation according to the Federal Civil

29

Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, for each violation of 31 U.S.C. § 3729;

  c.  The fair and reasonable sum to which Relator is entitled under 31 U.S.C. § 3730(b); additionally, Relator is entitled, in equity, to recover attorneys' fees from the fund created for non-participating beneficiaries (those not contributing material time and expense to generating any settlement or recovery from any Defendant) under the Common Fund doctrine to be paid from the recovery fund generated for such non-participatory beneficiaries from Defendant;

  d.  All costs and expenses of this litigation, including statutory attorneys' fees and costs of court;

  e.  Pre-judgment and post-judgment, as appropriate, interest at the highest rate allowed by law;

  f.  Relator's individual damages, if any, which may be alleged; and

  g.  All other relief on behalf of Relator or the United States Government to which they may be justly entitled, under law or in equity, and the District Court deems just and proper.

**COUNT IV**

**UNJUST ENRICHMENT**

  108.  Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

  109.  Relator, on behalf of the United States, claims the recovery of all monies by which Defendant has been unjustly enriched, including profits earned by Defendant

30

because of overcharging Medicaid and other Federal Payer Programs for covered therapy services.

110.    By obtaining monies as a result of its violations of federal and state law, Defendant was unjustly enriched, and is liable to account and pay such amounts, which are to be determined at trial, to the United States.

## PRAYER AS TO COUNT IV

WHEREFORE, Relator prays that this District Court enter judgment on behalf of Relator and against Defendant in Count IV as follows:

a.    Damages sustained by the United States, including the amounts Defendant unlawfully obtained;

b.    All costs and expenses of this litigation, including statutory attorneys' fees and costs of court;

e.    Pre-judgment and post-judgment, as appropriate, interest at the highest rate allowed by law;

f.    Relator's individual damages, if any, which may be alleged; and

g.    All other relief on behalf of Relator or the United States Government to which they may be justly entitled, under law or in equity, and the District Court deems just and proper.

## COUNT V
## VIOLATIONS OF THE ARKANSAS MEDICAID FCA
### ARK. CODE ANN. § 20-77-902(1)-(3)

111.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

31

112.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Arkansas to recover treble damages and civil penalties under the Arkansas Medicaid False Claims Act, ARK. CODE ANN. § 20-77-902(1)-(3) *et seq.*

113.    ARK. CODE ANN. § 20-77-902 provides liability for any person who-

    (1)    Knowingly makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment under the Arkansas Medicaid program;

    (2)    At any time knowingly makes or causes to be made any false statement or representation of a material fact for use in determining rights to a benefit or payment; or

    (3)    Having knowledge of the occurrence of any event affecting his or her initial or continued right to any benefit or payment or the initial or continued right to any benefit or payment of any other individual in whose behalf he or she has applied for or is receiving a benefit or payment knowingly conceals or fails to disclose that event with an intent fraudulently to secure the benefit or payment either in a greater amount or quantity than is due or when no benefit or payment is authorized.

114.    Defendant violated ARK. CODE ANN. § 20-77-902 and knowingly caused false claims to be made, used and presented to the State of Arkansas by its violations of Federal and State laws, including false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

115.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

116.    The State of Arkansas, by and through the Arkansas Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

117.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Arkansas. Had the State of Arkansas known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

118.    As a result of Defendant's violations of ARK. CODE ANN. § 20-77-902, the State of Arkansas has been damaged.

119.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to ARK. CODE ANN. § 20-77-902 on behalf of herself and the State of Arkansas.

120.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Arkansas in the operation of the Medicaid program.

**PRAYER AS TO COUNT V**

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF ARKANSAS:

(1)    Three times the amount of actual damages which the State of Arkansas has sustained as a result of Defendant's fraudulent and illegal practices;

(2)     A civil penalty of not less than $5,000 and not more than $10,000 for false claim which Defendant presented or caused to be presented to the State of Arkansas;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To RELATOR:

(1)     A fair and reasonable amount allowed pursuant to ARK. CODE ANN. § 20-77-911 and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3)     Such further relief as this Court deems equitable and just.

**COUNT VI**
**VIOLATIONS OF THE CALIFORNIA FALSE CLAIMS ACT**
**CAL. GOV'T CODE § 12651(a)**

121.     Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

122.     This is a *qui tam* action brought by Elizabeth W. Moore and the State of California to recover treble damages and civil penalties under the California False Claims Act, CAL. GOV'T CODE § 12650 *et. seq.*

123.     CAL. GOV'T CODE § 12651(a) provides liability for any person who-

(1)     Knowingly presents, or causes to be presented, to an officer or employee of the state or of any political division thereof, a false claim for payment or approval;

(2)     Knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the state or by any political subdivision;

(3)     Conspires to defraud the state or any political subdivision by getting a false claim allowed or paid by the state or by any political

34

subdivision.

124.    Defendant violated CAL. GOV'T CODE § 12651(a)(1)-(3) and knowingly caused false claims to be made, used and presented to the State of California by its violations of Federal and State laws and submitted false or fraudulent claims for payment for therapy services to which it was not entitled.  Defendant knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

125.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

126.    The State of California, by and through the California Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

127.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of California.  Had the State of California known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

128.    As a result of Defendant's violations of CAL. GOV'T CODE §12651(a), the State of California has been damaged.

129.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to CAL. GOV'T CODE § 12652(c) on behalf of herself and the State of California.

130.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of California in the operation of the Medicaid program.

## PRAYER AS TO COUNT VI

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively,

To the STATE OF CALIFORNIA:

    (1)    Three times the amount of actual damages which the State of California has sustained as a result of Defendant's fraudulent and illegal practices;

    (2)    A civil penalty of not less than $5,500 and not more than $11,000 for false claim which Defendant presented or caused to be presented to the State of California;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    A fair and reasonable amount allowed pursuant to CAL. GOV'T CODE § 12652 and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

    (3)    An award of statutory attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## COUNT VII
## VIOLATIONS OF THE CALIFORNIA INSURANCE FRAUDS PREVENTION ACT
### CAL. INS. CODE § 1871.7(b)

131.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

132.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of California to recover treble damages and civil penalties under the California Insurance Frauds Prevention Act, CAL. INS. CODE § 1871 *et. seq.*

133.    CAL. INS. CODE § 1871.7(b) provides liability for any person who violates any provision of Section 1871.7 or Section 549, 550, or 551 of the California Penal Code. Violators shall be subject, in addition to any other penalties prescribed by law, to a civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each claim for compensation.

134.    CAL. PENAL CODE § 550(b) makes it unlawful to do, knowingly assist or conspire with any person to do, *inter alia*:

> (1)    Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

> (2)    Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

(3)     Conceal, or knowingly fail to disclose the occurrence of, an event that affects any person's initial or continued right or entitlement to any insurance benefit or payment, or the amount of any benefit or payment to which the person is entitled.

(4)     Prepare or make any written or oral statement, intended to be presented to any insurer or producer for the purpose of obtaining a motor vehicle insurance policy, that the person to be the insured resides or is domiciled in this state when, in fact, that person resides or is domiciled in a state other than this state.

135.    Defendant violated CAL. PENAL CODE § 550(b) and CAL. INS. CODE § 1871.7(b) when it knowingly caused false claims to be made, used and presented to private insurance companies or PBMs, false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

136.    Had the private insurance companies and PBMs known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

137.    As a result of Defendant's violations of CAL. PENAL CODE § 550(b) and CAL. INS. CODE § 1871.7(b), the State of California has been damaged.

138.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to CAL. INS. CODE § 1871 *et. seq.* on behalf of herself and the State of California.

139.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of California under the California Insurance Frauds Prevention Act.

## PRAYER AS TO COUNT VII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF CALIFORNIA:

(1) Three times the amount of actual damages which the State of California has sustained as a result of Defendant's fraudulent and illegal practices;

(2) A civil penalty of not less than $5,000 and not more than $10,000 for false claim which Defendant presented or caused to be presented to private insurance companies or pharmacy benefit managers;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To RELATOR:

(1) A fair and reasonable amount allowed pursuant to CAL. INS. CODE § 1871.7(g) and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3) An award of statutory attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

### COUNT VIII
## VIOLATIONS OF THE COLORADO MEDICAID FALSE CLAIMS ACT
#### COLO. REV. STAT. ANN. § 25.5-4-303.5 *et seq.*

140.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

141.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Colorado to recover treble damages and civil penalties under the Colorado Medicaid False Claims Act, COLO. REV. STAT. ANN. § 25.5-4-303.5 *et seq.*

142.    COLO. REV. STAT. ANN § 25.5-4-305 provides liability for any person who, *inter alia*:

> (1)    Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (2)    Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim;
>
> (3)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act", or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act"
>
> (4)    Conspires to commit a violation…

143.    Defendant violated COLO. REV. STAT. ANN. § 25.5-4-305 and knowingly caused false claims to be made, used and presented to the State of Colorado by its violations of Federal and State laws when it submitted false or fraudulent claims for payment for therapy services to which it was not entitled.  Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of

40

the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

144.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

145.    The State of Colorado, by and through the Colorado Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

146.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Colorado. Had the State of Colorado known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

147.    As a result of Defendant's violations of COLO. REV. STAT. ANN. § 25.5-4-305, the State of Colorado has been damaged.

148.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to COLO. REV. STAT. ANN. § 25.5-4-305 on behalf of herself and the State of Colorado.

149.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Colorado in the operation of the Medicaid program.

## PRAYER AS TO COUNT VIII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF COLORADO:

(1)    Three times the amount of actual damages which the State of Colorado has sustained as a result of Defendant's fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for false claim which Defendant presented or caused to be presented to the State of Colorado;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to COLO. REV. STAT. ANN. § 25.5-4-306(3) and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT IX
### VIOLATIONS OF THE CONNECTICUT FALSE CLAIMS ACT FOR MEDICAL ASSISTANCE PROGRAMS
#### CONN. GEN. STAT. ANN. § 17b-301a *et seq.*

150.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

151.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Connecticut to recover treble damages and civil penalties under the Connecticut False Claims Act for Medical Assistance Programs, CONN. GEN. STAT. §§ 17b-301 *ET. seq.*

152.    CONN. GEN. STAT. ANN. § 17b-301b(a) provides liability for any person who, *inter alia*:

    (1)    Knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval under a medical assistance program administered by the Department of Social Services;

    (5)    Knowingly make, use or cause to be made or used, a false record or statement material to a false or fraudulent claim under a medical assistance program administered by the Department of Social Services;

    (6)    Conspire to commit a violation of this section . . . .

153.    Defendant violated CONN. GEN. STAT. ANN. § 17b-301b(a) and knowingly caused false claims to be made, used and presented to the State of Connecticut by its violations of Federal and State laws, when it submitted false or fraudulent claims for payment for drugs and vaccines to which it was not entitled.  Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

154.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

155.    The State of Connecticut, by and through the Connecticut Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

156.   Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Connecticut.  Had the State of Connecticut known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

157.   As a result of Defendant's violations of CONN. GEN. STAT. ANN. § 17b-301b(a), the State of Connecticut has been damaged.

158.   Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to CONN. GEN. STAT. ANN. § 17b-301d(a) on behalf of herself and the State of Connecticut.

159.   This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Connecticut in the operation of the Medicaid program.

## PRAYER AS TO COUNT IX

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF CONNECTICUT:

(1)   Three times the amount of actual damages which the State of Connecticut has sustained as a result of Defendant's fraudulent and illegal practices;

(2)   A civil penalty of not less than $5,500 and not more than $11,000 for false claim which Defendant presented or caused to be presented to the State of Connecticut;

(3)   Prejudgment interest; and

(4)   All costs incurred in bringing this action.

44

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to CONN. GEN. STAT. ANN. § 17b-301e(e) and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

<u>**COUNT X**</u>
**VIOLATIONS OF THE DELAWARE FALSE CLAIMS AND REPORTING ACT**
**6 DEL. CODE ANN. § 1201 *et seq.***

160.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

161.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Delaware to recover treble damages and civil penalties under the Delaware False Claims and Reporting Act, 6 DEL. CODE ANN. § 1201 *et seq.*

162.    6 DEL. CODE ANN. § 1201(a) provides liability for any person who, *inter alia*:

(1)    Knowingly presents, or causes to be presented to an officer or employee of the Government a false or fraudulent claim for payment or approval;

(2)    Knowingly makes, uses or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(3)    Conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

45

163.    Defendant violated 6 DEL. CODE ANN. § 1201(a) and knowingly caused false claims to be made, used and presented to the State of Delaware by its violations of Federal and State laws when it submitted false or fraudulent claims for payment for therapy services to which it was not entitled.  Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

164.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

165.    The State of Delaware, by and through the Delaware Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

166.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Delaware.  Had the State of Delaware known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

167.    As a result of Defendant's violations of 6 DEL. CODE ANN. § 1201(a), the State of Delaware has been damaged.

168.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to 6 DEL. CODE ANN. § 1203(b) on behalf of herself and the State of Delaware.

169.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Delaware in the operation of the Medicaid program.

## PRAYER AS TO COUNT X

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF DELAWARE:

    (1)    Three times the amount of actual damages which the State of Delaware has sustained as a result of Defendant's fraudulent and illegal practices;

    (2)    A civil penalty of not less than $5,500 and not more than $11,000 for false claim which Defendant presented or caused to be presented to the State of Delaware;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    A fair and reasonable amount allowed pursuant to 6 DEL. CODE ANN. § 1205 and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

    (3)    An award of statutory attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

<u>COUNT XI</u>

**VIOLATIONS OF THE DISTRICT OF COLUMBIA PROCUREMENT REFORM
AMENDMENT ACT
D.C. CODE ANN. § 2-381.01 *et seq.* [formerly D.C. CODE ANN. §2-308.13 *et seq.*]**

170.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

171.    This is a *qui tam* action brought by Elizabeth W. Moore and the District of Columbia to recover treble damages and civil penalties under the District of Columbia Procurement Reform Amendment Act, D.C. CODE ANN. § 2-381.01 *et seq.*

172.    D.C. CODE ANN. § 2-381.02 provides liability for any person who, *inter alia*:

    (1)    Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

    (2)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

    (3)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the District, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the District;

    (4)    Conspires to commit a violation of paragraph (1), (2), (3), (4), (5), or (6) of this subsection;

173.    Defendant violated D.C. CODE ANN. § 2-381.02 and knowingly caused false claims to be made, used and presented to the District by its violations of Federal and State laws, including by submitting false or fraudulent claims for payment for therapy services to which it was not entitled.  Defendant knew that these claims for payment were

48

false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

174.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

175.    The District, by and through the District's Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

176.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the District. Had the District known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

177.    As a result of Defendant's violations of D.C. CODE ANN. § 2-381.02 the District has been damaged.

178.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to D.C. CODE ANN. § 2-381.03 on behalf of herself and the District.

179.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the District in the operation of the Medicaid program.

## PRAYER AS TO COUNT XI

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the DISTRICT OF COLUMBIA:

(1) Three times the amount of actual damages which the District of Columbia has sustained as a result of Defendant's fraudulent and illegal practices;

(2) A civil penalty of not less than $5,500 and not more than $11,000 for false claim which Defendant presented or caused to be presented to the District;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To RELATOR:

(1) A fair and reasonable amount allowed pursuant to D.C. CODE ANN. § 2-381-03 and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3) An award of statutory attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT XII
## VIOLATIONS OF THE FLORIDA FALSE CLAIMS ACT
### FLA. STAT. ANN. § 68.081 *et seq.*

180.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

181.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Florida to recover treble damages and civil penalties under the Florida False Claims Act, FLA. STAT. ANN. § 68.081 *et seq.*

182.    FLA. STAT. ANN. § 68.082(2) provides liability for any person who, *inter alia*:

> (1)    Knowingly presents, or causes to be presented, to an officer or employee of an agency a false or fraudulent claim for payment or approval;
>
> (2)    Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by an agency;
>
> (3)    Conspires to submit a false claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid.

183.    Defendant violated FLA. STAT. ANN. § 68.082(2) and knowingly caused false claims to be made, used and presented to the State of Florida by its violations of Federal and State laws, including by submitting false or fraudulent claims for payment for therapy services to which it was not entitled.  Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

51

184.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

185.    The State of Florida, by and through the Florida Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

186.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Florida.  Had the State of Florida known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

187.    As a result of Defendant's violations of FLA. STAT. ANN. § 68.082(2) the State of Florida has been damaged.

188.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to FLA. STAT. ANN. § 68.083(2) on behalf of herself and the District.

189.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Florida in the operation of the Medicaid program.

## **PRAYER AS TO COUNT XII**

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF FLORIDA:

(1)    Three times the amount of actual damages which the State of Florida has sustained as a result of Defendant's fraudulent and

illegal practices;

(2) A civil penalty of not less than $5,500 and not more than $11,000 for false claim which Defendant presented or caused to be presented to the District;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To RELATOR:

(1) A fair and reasonable amount allowed pursuant to FLA. STAT. ANN. § 68.085 and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3) An award of statutory attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT XIII
## VIOLATIONS OF THE GEORGIA STATE FALSE MEDICAID CLAIMS ACT
### GA. CODE ANN. § 49-4-168 *et seq.*

190.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

191.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Georgia to recover treble damages and civil penalties under the Georgia State False Medicaid Claims Act, GA. CODE ANN. §§ 49-4-168 to 168.6.

192.    GA. CODE ANN. §§ 49-4-168.1 provides liability for any person who, *inter alia*:

(1) Knowingly presents or causes to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval;

(2)     Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Georgia Medicaid program;

(3)     Conspires to defraud the Georgia Medicaid program by getting a false or fraudulent claim allowed or paid.

193.    Defendant violated GA. CODE ANN. §§ 49-4-168.1 and knowingly caused false claims to be made, used and presented to the State of Georgia by its violations of Federal and State laws, including by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

194.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

195.    The State of Georgia, by and through the Georgia Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

196.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Georgia. Had the State of Georgia known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

197.    As a result of Defendant's violations of GA. CODE ANN. §§ 49-4-168.1 the State of Georgia has been damaged.

198.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to GA. CODE ANN. §§ 49-4-168.2(b) on behalf of herself and the State of Georgia.

199.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Georgia in the operation of the Medicaid program.

## PRAYER AS TO COUNT XIII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF GEORGIA:

(1)    Three times the amount of actual damages which the State of Georgia has sustained as a result of Defendant's fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for false claim which Defendant presented or caused to be presented to the State of Georgia;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to GA. CODE ANN. §§ 49-4-168.2(I) and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XIV
## VIOLATIONS OF THE HAWAII FALSE CLAIMS ACT
### HAW. REV. STAT. § 661-21 *et seq.*

200.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

201.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Hawaii to recover treble damages and civil penalties under the Hawaii False Claims Act, HAW. REV. STAT. § 661-21 *et seq.*

202.    HAW. REV. STAT. § 661-21 provides liability for any person who, *inter alia*:

    (1)    Knowingly presents or causes to be presented to an officer or employee of the State a false or fraudulent claim for payment or approval;

    (2)    Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

    (3)    Conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

203.    Defendant violated HAW. REV. STAT. § 661-21 and knowingly caused false claims to be made, used and presented to the State of Hawaii by its violations of Federal and State laws, including by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

56

204.   Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

205.   The State of Hawaii, by and through the Hawaii Medicaid program and other State healthcare programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

206.   Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Hawaii. Had the State of Hawaii known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

207.   As a result of Defendant's violations of HAW. REV. STAT. § 661-21 the State of Hawaii has been damaged.

208.   Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to HAW. REV. STAT. § 661-25 on behalf of herself and the State of Hawaii.

209.   This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Hawaii in the operation of the Medicaid program.

## PRAYER AS TO COUNT XIV

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF Hawaii:

(1)   Three times the amount of actual damages which the State of Hawaii has sustained as a result of Defendant's fraudulent and

illegal practices;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for false claim which Defendant presented or caused to be presented to the State of Hawaii;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to HAW. REV. STAT. § 661-27 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## <u>COUNT XV</u>
## VIOLATIONS OF THE ILLINOIS FALSE CLAIMS ACT
### 740 ILL. COMP. STAT. § 175 *et seq.*

210.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

211.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Illinois to recover treble damages and civil penalties under the Illinois False Claims Act, 740 ILCS § 175 *et seq.*

212.    740 ILCS § 175/3 provides liability for any person who, *inter alia*:

(1)    Knowingly presents, or causes to be presented, to an officer or employee of the State or a member of the Guard a false or fraudulent claim for payment or approval;

(2)    Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

(3)    Conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

213.    Defendant violated 740 ILCS § 175/3 and knowingly caused false claims to be made, used and presented to the State of Illinois by its violations of Federal and State laws, including 305 ILCS 5/8A-3(b),  and by submitting false or fraudulent claims for payment for therapy services to which it was not entitled.  Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

214.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

215.    The State of Illinois, by and through the Illinois Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

216.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Illinois.  Had the State of Illinois known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

217.    As a result of Defendant's violations of 740 ILCS § 175/3, the State of Illinois has been damaged.

218. Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to 740 ILCS § 175/4(b) on behalf of herself and the State of Illinois.

219. This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Illinois in the operation of the Medicaid program.

## PRAYER AS TO COUNT XV

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF Illinois:

(1) Three times the amount of actual damages which the State of Illinois has sustained as a result of Defendant's fraudulent and illegal practices;

(2) A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant presented or caused to be presented to the State of Illinois;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To RELATOR:

(1) A fair and reasonable amount allowed pursuant to 740 ILCS § 175/4(d) and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3) An award of statutory attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT XVI
## VIOLATIONS OF THE ILLINOIS INSURANCE CLAIMS FRAUD PREVENTION ACT
### 740 ILL. COMP. STAT. 92/1 *et seq.*

220.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

221.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Illinois to recover treble damages and civil penalties under the Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/1 *et seq.*

222.    740 ILCS 92/1 provides liability for any person who violates any provision of Section 92/1 or Section 17-8.5 or 10.5 of the Criminal Code of 1961 or 2012, or Article 46 of the Criminal Code of 1961. Violators shall be subject, in addition to any other penalties prescribed by law, to a civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each claim for compensation.

223.    ILL. CRIM. CODE § 17-10.5(a) states:

(1)    A person commits insurance fraud when he or she knowingly obtains, attempts to obtain, or causes to be obtained, by deception, control over the property of an insurance company or self-insured entity by the making of a false claim or by causing a false claim to be made on any policy of insurance issued by an insurance company or by the making of a false claim or by causing a false claim to be made to a self-insured entity, intending to deprive an insurance company or self-insured entity permanently of the use and benefit of that property

(2)    A person commits health care benefits fraud against a provider, other than a governmental unit or agency, when he or she knowingly obtains or attempts to obtain, by deception, health care benefits and that obtaining or attempt to obtain health care benefits does not involve control over property of the provider.

61

224.    "Deception" means knowingly to:

    (1) Create or confirm another's impression which is false and which the offender does not believe to be true; or

    (2) Fail to correct a false impression which the offender previously has created or confirmed; or

    (3) Prevent another from acquiring information pertinent to the disposition of the property involved; or

    (4) Sell or otherwise transfer or encumber property, failing to disclose a lien, adverse claim, or other legal impediment to the enjoyment of the property, whether such impediment is or is not valid, or is or is not a matter of official record; or

    (5) Promise performance which the offender does not intend to perform or knows will not be performed. Failure to perform standing alone is not evidence that the offender did not intend to perform.

225.    Defendant violated 740 ILCS § 92/1 and ILL. CRIM. CODE § 17-10.5(a) when it knowingly caused false claims to be made, used and presented to private insurance companies or PBMs, false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

226.    Had the private insurance companies and PBMs known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

227.    As a result of Defendant's violations of 740 ILCS 92/1 and ILL. CRIM. CODE § 17-10.5(a), the State of Illinois has been damaged.

228.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to 740 ILCS § 92/15 on behalf of herself and the State of Illinois.

229.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Illinois under the Illinois Insurance Claims Fraud Prevention Act.

### PRAYER AS TO COUNT XVI

230.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF Illinois:

> (1)    Three times the amount of actual damages which the State of Illinois has sustained as a result of Defendant's fraudulent and illegal practices;

> (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant presented or caused to be presented to private insurance companies or pharmacy benefit managers;

> (3)    Prejudgment interest; and

> (4)    All costs incurred in bringing this action.

To RELATOR:

> (1)    A fair and reasonable amount allowed pursuant to 740 ILCS 92/25 and/or any other applicable provision of law;

> (2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

> (3)    An award of statutory attorneys' fees and costs; and

> (4)    Such further relief as this Court deems equitable and just.

<u>COUNT XVII</u>
**VIOLATIONS OF THE INDIANA FALSE CLAIMS AND WHISTLEBLOWER**
**PROTECTION ACT**
**IND. CODE ANN. § 5-11-5.5-1 *et seq.***

231.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

232.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Indiana to recover treble damages and civil penalties under the Indiana False Claims and Whistleblower Protection Act, IND. CODE ANN. § 5-11-5.5-1 *et seq.*

233.    IND. CODE ANN. § 5-11-5.5-1 provides liability for any person who, *inter alia*, knowingly or intentionally:

    (1)    presents a false claim to the state for payment or approval;

    (2)    Makes or uses a false record or statement to obtain payment or approval of a false claim from the State;

* * *

    (7)    Conspires with another person to perform an act described in subdivisions (1) through (6); or

    (8)    Causes or induces another person to perform an act described in subdivisions (1) through (6). . . .

234.    Defendant violated IND. CODE ANN. § 5-11-5.5-1 and knowingly caused false claims to be made, used and presented to the State of Indiana by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

235.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

236.    The State of Indiana, by and through the Indiana Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

237.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Indiana.  Had the State of Indiana known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

238.    As a result of Defendant's violations of IND. CODE ANN. § 5-11-5.5-1, the State of Indiana has been damaged.

239.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to IND. CODE ANN. § 5-11-5.5-4 on behalf of herself and the State of Indiana.

240.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Indiana in the operation of the Medicaid program.

## PRAYER AS TO COUNT XVII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF INDIANA:

(1)     Three times the amount of actual damages which the State of Indiana has sustained as a result of Defendant's fraudulent and illegal practices;

(2)     A civil penalty of at least $5,000 for each false claim which Defendant presented or caused to be presented to the State of Indiana;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To RELATOR:

(5)     A fair and reasonable amount allowed pursuant to IND. CODE ANN. § 5-11-5.5-6 and/or any other applicable provision of law;

(6)     Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(7)     An award of statutory attorneys' fees and costs; and

(8)     Such further relief as this Court deems equitable and just.

## COUNT XVIII
## VIOLATIONS OF THE IOWA FALSE CLAIMS ACT
### IOWA CODE ANN. § 685.2 *et seq.*

241.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

242.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Iowa to recover treble damages and civil penalties under the Iowa False Claims Act, IOWA CODE ANN. § 685.2 *et seq.*

243.    IOWA CODE ANN. § 685.2 provides liability for any person who, *inter alia*:

(1)     Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval.

(2)     Knowingly makes, uses, or causes to be made or used, a false

record or statement material to a false or fraudulent claim.

(3)      Conspires to commit a violation of…

244.    Defendant violated IOWA CODE ANN. § 685.2 and knowingly caused false claims to be made, used and presented to the State of Indiana by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled.  Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

245.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

246.    The State of Iowa, by and through the Iowa Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

247.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Iowa.  Had the State of Iowa known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

248.    As a result of Defendant's violations of IOWA CODE ANN. § 685.2, the State of Iowa has been damaged.

249.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to IOWA CODE ANN. § 685.3(2) on behalf of herself and the State of Iowa.

67

250.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Iowa in the operation of the Medicaid program.

**PRAYER AS TO COUNT XVIII**

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF IOWA:

(1)    Three times the amount of actual damages which the State of Iowa has sustained as a result of Defendant's fraudulent and illegal practices;

(2)    Civil penalties against the Defendant, respectively, equal to not less than $5,000 and not more than $10,000, adjusted for inflation according to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, for each violation of 31 U.S.C. § 3729, as prescribed by IOWA CODE ANN. § 685.2(1);

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to IOWA CODE ANN. § 685.3(4) and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XIX
## VIOLATIONS OF THE LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW
### LA. REV. STAT. § 46:437.1 *et seq.*

251.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

252.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Louisiana to recover treble damages and civil penalties under the Louisiana Medical Assistance Programs Integrity Law, LA. REV. STAT. § 46:437.1 *et seq.*

253.    LA. REV. STAT. § 46:437.3 provides *inter alia*:

> (1)    No person shall knowingly present or cause to be presented a false or fraudulent claim;

> (2)    No person shall knowingly engage in misrepresentation to obtain, or attempt to obtain, payment from medical assistance program funds;

> (3)    No person shall conspire to defraud, or attempt to defraud, the medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim. . . .

254.    Defendant violated LA. REV. STAT. § 46:437.3 when it knowingly caused false claims to be made, used and presented to the State of Louisiana by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled.  Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

69

255.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

256.    The State of Louisiana, by and through the Louisiana Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

257.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Louisiana. Had the State of Louisiana known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

258.    As a result of Defendant's violations of violated LA. REV. STAT. § 46:437.3, the State of Louisiana has been damaged.

259.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to LA. REV. STAT. § 46:439.1(A) on behalf of herself and the State of Louisiana.

260.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Louisiana in the operation of the Medicaid program.

### PRAYER AS TO COUNT XIX

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF LOUISIANA:

70

(1)    Three times the amount of actual damages which the State of Louisiana has sustained as a result of Defendant's fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of Louisiana;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to La. Rev. Stat. § 439.4(A) and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XX
### VIOLATIONS OF THE MARYLAND FALSE HEALTH CLAIMS ACT
MD. HEALTH-GEN. CODE ANN. § 2-601 *et seq.*

261.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

262.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Maryland to recover treble damages and civil penalties under the Maryland False Health Claims Act, MD. HEALTH-GEN. CODE ANN. § 2-601 *et seq.*

263.    MD. HEALTH-GEN. CODE ANN. § 2-602 provides that a person may not, *inter alia*:

(1)    Knowingly present or cause to be presented a false or fraudulent claim for payment or approval;

71

(2)    Knowingly make, use, or cause to be made or used a false record or statement material to a false or fraudulent claim;

(3)    Conspire to commit a violation under this subtitle;

(4)    Knowingly make any other false or fraudulent claim against a State health plan or a State health program.

264.    Defendant violated MD. HEALTH-GEN. CODE ANN. § 2-602 when it knowingly caused false claims to be made, used and presented to the State of Louisiana by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

265.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

266.    The State of Maryland, by and through the Maryland Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

267.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Maryland. Had the State of Maryland known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

268.    As a result of Defendant's violations of violated MD. HEALTH-GEN. CODE ANN. § 2-602, the State of Maryland has been damaged.

269. Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to MD. HEALTH-GEN. CODE ANN. § 2-604(a) on behalf of herself and the State of Maryland.

270. This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Maryland in the operation of the Medicaid program.

**PRAYER AS TO COUNT XX**

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF MARYLAND:

(1) Three times the amount of actual damages which the State of Maryland has sustained as a result of Defendant's fraudulent and illegal practices;

(2) A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of Maryland;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To RELATOR:

(1) A fair and reasonable amount allowed pursuant to MD. HEALTH-GEN. CODE ANN. § 2-605 and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3) An award of statutory attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT XXI
## VIOLATIONS OF THE MASSACHUSETTS FALSE CLAIMS ACT
### MASS. GEN. LAWS ANN. ch. 12 § 5A *et seq.*

271.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

272.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Massachusetts to recover treble damages and civil penalties under the Massachusetts False Claims Law, MASS. GEN. LAWS ANN. ch. 12 § 5A *et seq.*

273.    MASS. GEN. LAWS ANN. ch. 12 § 5B provides liability for any person who:

(1)    Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(2)    Knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the commonwealth or any political subdivision thereof;

(3)    Conspires to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim;

(4)    Is a beneficiary of an inadvertent submission of a false claim to the commonwealth or political subdivision thereof, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the commonwealth or political subdivision within a reasonable time after discovery of the false claim.

274.    Defendant violated MASS. GEN. LAWS ANN. ch. 12 § 5B § 2-602 when it knowingly caused false claims to be made, used and presented to the State of Massachusetts by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was

74

deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

275.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

276.    The State of Massachusetts, by and through the Massachusetts Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

277.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Massachusetts. Had the State of Massachusetts known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

278.    As a result of Defendant's violations of MASS. GEN. LAWS ANN. ch. 12 § 5B the State of Massachusetts has been damaged.

279.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to MASS. GEN. LAWS ANN. ch. 12 § 5C(2) on behalf of herself and the State of Massachusetts.

280.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Massachusetts in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXI

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF MASSACHUSETTS:

(1)     Three times the amount of actual damages which the State of Massachusetts has sustained as a result of Defendant's fraudulent and illegal practices;

(2)     A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant caused to be presented to the State of Massachusetts;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To RELATOR:

(1)     A fair and reasonable amount allowed pursuant to MASS. GEN. LAWS ANN. ch. 12 § 5F and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3)     An award of statutory attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXII
## VIOLATIONS OF THE MICHIGAN MEDICAID FALSE CLAIMS ACT
### MICH. COMP. LAWS § 400.601 *et seq.*

281. Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

282. This is a *qui tam* action brought by Elizabeth W. Moore and the State of Michigan to recover treble damages and civil penalties under the Michigan Medicaid False Claims Act, MICH. COMP. LAW § 400.601 *et seq.*

283. MICH. COMP. LAW § 400.603 states:

    (1)    A person shall not knowingly make or cause to be made a false statement or false representation of a material fact in an application for Medicaid benefits.

    (2)    A person shall not knowingly make or cause to be made a false statement or false representation of a material fact for use in determining rights to a Medicaid benefit.

    (3)    A person, who having knowledge of the occurrence of an event affecting his initial or continued right to receive a Medicaid benefit or the initial or continued right of any other person on whose behalf he has applied for or is receiving a benefit, shall not conceal or fail to disclose that event with intent to obtain a benefit to which the person or any other person is not entitled or in an amount greater than that to which the person or any other person is entitled.

284. MICH. COMP. LAWS § 400.606 states:

    (1)    A person shall not enter into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another to obtain the payment or allowance of a false claim under the social welfare act, Act No. 280 of the Public Acts of 1939, as amended, being sections 400.1 to 400.121 of the Michigan Compiled Laws.

285. MICH. COMP. LAWS § 400.607 states:

    (1)    A person shall not make or present or cause to be made or

presented to an employee or officer of this state a claim under the social welfare act, 1939 PA 280, MCL 400.1 to 400.119b, upon or against the state, knowing the claim to be false.

286.    Defendant violated MICH. COMP. LAW § 400.603, MICH. COMP. LAW § 400.604, MICH. COMP. LAW § 400.606, and MICH. COMP. LAW § 400.607 when it knowingly caused false claims to be made, used and presented to the State of Massachusetts by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

287.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

288.    The State of Michigan, by and through the Michigan Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

289.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Michigan. Had the State of Michigan known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

290.    As a result of Defendant's violations of MICH. COMP. LAW §§ 400.603, 400.604, 400.606, and 400.607, the State of Michigan has been damaged.

291.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to MICH. COMP. LAW § 400.610a on behalf of herself and the State of Michigan.

292.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Michigan in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF MICHIGAN:

    (1)    Three times the amount of actual damages which the State of Michigan has sustained as a result of Defendant's fraudulent and illegal practices;

    (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of Michigan;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    A fair and reasonable amount allowed pursuant to MICH. COMP. LAW § 400.610a and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

    (3)    An award of statutory attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## COUNT XXIII
## VIOLATIONS OF THE MINNESOTA FALSE CLAIMS ACT
### MINN. STAT. § 15C.01 *et seq.*

293.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

294.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Minnesota to recover treble damages and civil penalties under the Minnesota False Claims Act, MINN. STAT. § 15C.01 *et seq.*

295.    MINN. STAT. § 15C.02 creates liability for any person who, *inter alia*:

    (1)    knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

    (2)    knowingly makes or uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

    (3)    knowingly conspires to commit a violation of [this section] . . .

296.    Defendant violated MINN. STAT. § 15C.02 when it knowingly caused false claims to be made, used and presented to the State of Minnesota by its violations of Federal and State laws by submitting false or fraudulent claims for payment for d therapy services to which it was not entitled.  Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

297.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

80

298.    The State of Minnesota, by and through the Minnesota Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

299.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Minnesota. Had the State of Minnesota known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

300.    As a result of Defendant's violations of MINN. STAT. § 15C.02, the State of Minnesota has been damaged.

301.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to MINN. STAT. § 15C.05 on behalf of herself and the State of Minnesota.

302.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Minnesota in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXIII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF MINNESOTA:

(1)    Three times the amount of actual damages which the State of Minnesota has sustained as a result of each Defendant's fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant caused to be presented to the

State of Minnesota;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to MINN. STAT. § 15C.05 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

### COUNT XXIV
### VIOLATIONS OF THE MONTANA FALSE CLAIMS ACT
### MONT. CODE. ANN. § 17-8-401 *et seq.*

303.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

304.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Montana to recover treble damages and civil penalties under the Montana False Claims Act, MONT. CODE. ANN. § 17-8-401 *et seq.*

305.    MONT. CODE ANN. § 17-8-403(1) creates liability for any person who, *inter alia*:

(1)    knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(2)    knowingly makes or uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(3)    conspires to commit a violation of this subsection (1)

(4)  knowingly makes or uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to a governmental entity or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to a governmental entity

306.  Defendant violated MONT. CODE ANN. § 17-8-403(1) and MONT. CODE. ANN. § 45-6-313 when it knowingly caused false claims to be made, used and presented to the State of Minnesota by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

307.  Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

308.  The State of Montana, by and through the Montana Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

309.  Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Montana. Had the State of Montana known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

310.  As a result of Defendant's violations of MONT. CODE ANN. § 17-8-403(1), the State of Montana has been damaged.

311.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to MONT. CODE ANN. § 17-8-406 on behalf of herself and the State of Montana.

312.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Montana in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXIV

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF MONTANA:

(1)    Three times the amount of actual damages which the State of Montana has sustained as a result of Defendant's fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant caused to be presented to the State of Montana;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to MONT. CODE ANN. § 17-8-410 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

84

## COUNT XXV
### VIOLATIONS OF THE NEVADA FALSE CLAIMS ACT
NEV. REV. STAT. ANN. § 357.010 *et seq.*
*as amended by* 2013 Nev. Laws Ch. 245 (S.B. 437) effective July 1, 2013

313.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

314.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Nevada to recover treble damages and civil penalties under the Nevada False Claims Act, NEV. REV. STAT. ANN. § 357.010 *et seq.*

315.    NEV. REV. STAT. ANN. § 357.040 provides liability for any person who, *inter alia*:

> (1)    Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval.
>
> (2)    Knowingly makes or uses, or causes to be made or used, a false record or statement that is material to a false or fraudulent claim;
>
> (3)    Knowingly makes or uses, or causes to be made or used, a false record or statement that is material to an obligation to pay or transmit money or property to the state or a political subdivision
>
> (4)    Conspires to commit any acts set forth in this subsection

316.    In addition, NEV. REV. STAT. ANN. § 422.560 prohibits any person from selling or leasing to or for use of a provider goods, services, materials, or supplies for which payment may be made under the Nevada Medicaid program, and offer, transfer, or pay anything of value in return for or in connection with the purchase or lease.

317.    Defendant violated NEV. REV. STAT. ANN. § 357.040 and NEV. REV. STAT. ANN. § 422.560 when it knowingly caused false claims to be made, used and presented to

the State of Nevada by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

318.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

319.    The State of Nevada, by and through the Nevada Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

320.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Nevada.  Had the State of Nevada known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

321.    As a result of Defendant's violations of Nev. Rev. Stat. Ann. § 357.040 and Nev. Rev. Stat. Ann. § 422.560, the State of Nevada has been damaged.

322.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to Nev. Rev. Stat. Ann. § 357.080 on behalf of herself and the State of Nevada.

323.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely

asserts separate damages to the State of Nevada in the operation of the Medicaid program.

## <u>PRAYER AS TO COUNT XXV</u>

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF NEVADA:

(1)    Three times the amount of actual damages which the State of Nevada has sustained as a result of Defendant's fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant caused to be presented to the State of Nevada;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to NEV. REV. STAT. ANN. § 357.180 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XXVI
## VIOLATIONS OF THE NEW HAMPSHIRE FALSE CLAIMS ACT
### N.H. REV. STAT. ANN. § 167:61 *et seq.*

324.    Relator restates and realleges the allegations contained in the preceding paragraphs as if were stated herein in their entirety and said allegations are incorporated herein by reference.

325.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of New Hampshire to recover treble damages and civil penalties under the New Hampshire False Claims Act, N.H. REV. STAT. ANN. § 167:61 *et seq.*

326.    N.H. REV. STAT. ANN. § 167:61-a(1) states no person shall:

(1)    Knowingly make, present or cause to be made or presented, with intent to defraud, any false or fraudulent claim for payment for any good, service, or accommodation for which payment may be made in whole or in part under RSA 161 or RSA 167;

(2)    Knowingly make, present, or cause to be made or presented, with intent to defraud, any false or fraudulent statement or representation for use in determining rights to benefits or payments which may be made in whole or in part under RSA 161 or RSA 167;

(3)    Knowingly make, present, or cause to be made or presented, with intent to defraud, any false or fraudulent report or filing which is or may be used in computing or determining a rate of payment for goods, services, or accommodations for which payment may be made in whole or in part under RSA 161 or RSA 167; or make, present, or cause to be made or presented any false or fraudulent statement or representation in connection with any such report or filing;

(4)    Knowingly make, present, or cause to be made or presented, with intent to defraud, any claim for payment, for any good, service, or accommodation for which payment may be made in whole or in part under RSA 161 or RSA 167, which is not medically necessary in accordance with professionally recognized standards.

(5)    Knowingly solicit or receive any remuneration, including any bribe or rebate, directly, or indirectly, overtly or covertly, in cash or in

88

kind, in return for purchasing, leasing, ordering, or arranging for or recommending the purchase, lease, or ordering of any good, service, accommodation or facility for which payment may be made in whole or in part under RSA 161 or RSA 167, or knowingly offering to pay any remuneration, including any bribe or rebate, directly, or indirectly, overtly or covertly, in cash or in kind, to induce a person to purchase, lease, order, or arrange for or recommend the purchase, lease, or ordering of any good, service, accommodation of facility for which payment may be made in whole or in part under RSA 161 or RSA 167 . . .

327. Defendant violated N.H. REV. STAT. ANN. § 167:61-a(1) when it knowingly caused false claims to be made, used and presented to the State of New Hampshire by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

328. Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

329. The State of New Hampshire, by and through the New Hampshire Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

330. Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of New Hampshire. Had the State of New Hampshire known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

331.    As a result of Defendant's violations of N.H. REV. STAT. ANN. § 167:61-a(1), the State of New Hampshire has been damaged.

332.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to N.H. REV. STAT. ANN. § 167:61-c on behalf of herself and the State of New Hampshire.

333.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of New Hampshire in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXVI

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF NEW HAMPSHIRE:

(1)    Three times the amount of actual damages which the State of New Hampshire has sustained as a result of Defendant's fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of New Hampshire;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to N.H. REV. STAT. ANN. § 167:61-e and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

90

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XXVII
## VIOLATIONS OF THE NEW JERSEY FALSE CLAIMS ACT
### N.J. STAT. ANN. §§ 2A:32C-1 *et seq.*

334.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

335.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of New Jersey to recover treble damages and civil penalties under the New Jersey False Claims Act, N.J. STAT. ANN. § 2A:32C-1 *et seq.*

336.    N.J. STAT. ANN. § 2A:32C-3 states no person shall:

(1)    Knowingly presents or causes to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval;

(2)    Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State;

(3)    Conspires to defraud the State by getting a false or fraudulent claim allowed or paid by the State.

337.    Defendant violated N.J. STAT. ANN. § 2A:32C-3 when it knowingly caused false claims to be made, used and presented to the State of New Jersey by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or

falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

338.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

339.    The State of New Jersey, by and through the New Jersey Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

340.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of New Jersey.  Had the State of New Jersey known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

341.    As a result of Defendant's violations of N.J. STAT. ANN. § 2A:32C-3, the State of New Jersey has been damaged.

342.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to N.J. STAT. ANN. § 2A:32C-5 on behalf of herself and the State of New Jersey.

343.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of New Jersey in the operation of the Medicaid program.

## **PRAYER AS TO COUNT XXVII**

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF NEW JERSEY:

(1) Three times the amount of actual damages which the State of New Jersey has sustained as a result of Defendant's fraudulent and illegal practices;

(2) A civil penalty of not less than $5,000 and not more than $10,000, adjusted for inflation according to N.J. STAT. ANN. § 2A:32C-3, for each false claim which Defendant caused to be presented to the State of New Jersey;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To RELATOR:

(1) A fair and reasonable amount allowed pursuant to N.J. STAT. ANN. § 2A:32C-7 and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3) An award of statutory attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT XXVIII
## VIOLATIONS OF THE NEW MEXICO MEDICAID FALSE CLAIMS ACT
### N.M. STAT. ANN. §§ 27-14-1 *et seq.*

344.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

345.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of New Mexico to recover treble damages and civil penalties under the New Mexico Medicaid False Claims Act, N.M. STAT. ANN. § 27-14-1 *et seq.*

346.    N.M. STAT. ANN. § 27-14-4 provides liability for any person who, *inter alia*:

(1)    Presents, or causes to be presented, to the state a claim for payment under the Medicaid program knowing that such claim is false or fraudulent;

(2)    Makes, uses or causes to be made or used a record or statement to obtain a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false;

(3)    Conspires to defraud the state by getting a claim allowed or paid under the Medicaid program knowing that such claim is false or fraudulent.

347.    N.M. STAT. ANN. § 44-9-3 makes it illegal to, *inter alia*:

(1)    Knowingly present, or cause to be presented, to an employee, officer or agent of the state or to a contractor, grantee or other recipient of state funds a false or fraudulent claim for payment or approval;

(2)    Knowingly make or use, or cause to be made or used, a false, misleading or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim;

(3)    Conspire to defraud the state by obtaining approval or payment on a false or fraudulent claim;

94

(4)    Conspire to make, use or cause to be made or used, a false, misleading or fraudulent record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state;

(5)    As a beneficiary of an inadvertent submission of a false claim and having subsequently discovered the falsity of the claim, fail to disclose the false claim to the state within a reasonable time after discovery.

348.    Defendant violated N.M. STAT. ANN. § 27-14-4 and § 44-9-3 when it knowingly caused false claims to be made, used and presented to the State of New Mexico by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

349.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

350.    The State of New Mexico, by and through the New Mexico Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

351.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of New Mexico. Had the State of New Mexico known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

352.    As a result of Defendant's violations of N.M. STAT. ANN. § 27-14-4 and § 44-9-3, the State of New Mexico has been damaged.

353.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to N.M. STAT. ANN. § 27-14-7 and § 44-9-5 on behalf of herself and the State of New Mexico.

354.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of New Mexico in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXVIII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF NEW MEXICO:

(1)    Three times the amount of actual damages which the State of New Jersey has sustained as a result of each Defendant's fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,000 and not more than $10,000, for false claim which Defendant caused to be presented to the State of New Mexico;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to N.M. STAT. ANN. § 27-14-9, 44-9-7 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3)     An award of statutory attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

### COUNT XXIX
### VIOLATIONS OF THE NEW YORK FALSE CLAIMS ACT
### N.Y. STATE FIN. §§ 187 *et seq.*

355.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

356.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of New York to recover treble damages and civil penalties under the New York False Claims Act, N.Y. STATE FIN. § 187 *et seq.*

357.    N.Y. STATE FIN. § 189 provides liability for any person who, *inter alia*:

(1)     Knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval;

(2)     Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(3)     Conspires to commit a violation of . . . this subdivision . . .

358.    Defendant violated N.Y. STATE FIN. § 189 when it knowingly caused false claims to be made, used and presented to the State of New York by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled.  Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

359.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

360.    The State of New York, by and through the New York Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

361.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of New York. Had the State of New York known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

362.    As a result of Defendant's violations of N.Y. STATE FIN. § 189, the State of New York has been damaged.

363.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to N.Y. STATE FIN. § 190(2) on behalf of herself and the State of New York.

364.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of New York in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXIX

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF NEW YORK:

98

(1)     Three times the amount of actual damages which the State of New York has sustained as a result of Defendant's fraudulent and illegal practices;

(2)     A civil penalty of not less than $6,000 and not more than $12,000, for each false claim which Defendant caused to be presented to the State of New York;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To RELATOR:

(1)     A fair and reasonable amount allowed pursuant to N.Y. STATE FIN. § 190 and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3)     An award of statutory attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXX
## VIOLATIONS OF THE NORTH CAROLINA FALSE CLAIMS ACT
### N.C. GEN. STAT. §§ 1-605 *et seq.*

365.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

366.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of North Carolina to recover treble damages and civil penalties under the North Carolina False Claims Act, N.C. GEN. STAT. § 1-605 *et seq.*

367.    N.C. GEN. STAT. § 1-607 provides liability for any person who, *inter alia*:

(1)     Knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval.

99

(2)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.

(3)    Conspires to commit a violation of . . . this section.

368.    Defendant violated N.C. GEN. STAT. § 1-607 when it knowingly caused false claims to be made, used and presented to the State of North Carolina by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

369.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

370.    The State of North Carolina, by and through the North Carolina Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

371.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of North Carolina. Had the State of North Carolina known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

372.    As a result of Defendant's violations of N.C. GEN. STAT. § 1-607, the State of North Carolina has been damaged.

373.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to N.C. GEN. STAT. § 1-608(b) on behalf of herself and the State of North Carolina.

374.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of North Carolina in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXX

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF NORTH CAROLINA:

    (1)    Three times the amount of actual damages which the State of North Carolina has sustained as a result of Defendant's fraudulent and illegal practices;

    (2)    A civil penalty of not less than $5,500 and not more than $11,000, for each false claim which Defendant caused to be presented to the State of North Carolina;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    A fair and reasonable amount allowed pursuant to N.C. GEN. STAT. § 1-610 and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

    (3)    An award of statutory attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## COUNT XXXI
### VIOLATIONS OF THE OKLAHOMA MEDICAID FALSE CLAIMS ACT
### 63 OKL. ST. ANN. § 5053 *et seq.*

375.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

376.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Oklahoma to recover treble damages and civil penalties under the Oklahoma False Claims Act, 63 OKL. ST. ANN. § 5053 *et seq.*

377.    63 OKL. ST. ANN. § 5053.1 provides liability for any person who, *inter alia*:

    (1)    Knowingly presents, or causes to be presented, to an officer or employee of the State of Oklahoma, a false or fraudulent claim for payment or approval;

    (2)    Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

    (3)    Conspires to defraud the state by getting a false or fraudulent claim allowed or paid;

378.    The Oklahoma Medicaid Program Integrity Act, 56 OKL. STAT. ANN. § 1005 makes it unlawful to willfully and knowingly, *inter alia*:

    (1)    Make or cause to be made a claim, knowing the claim to be false, in whole or in part, by commission or omission;

    (2)    Make or cause to be made a statement or representation for use in obtaining or seeking to obtain authorization to provide a good or a service knowing the statement or representation to be false, in whole or in part, by commission or omission;

    (3)    Make or cause to be made a statement or representation for use by another in obtaining a good or a service under the Oklahoma

Medicaid Program, knowing the statement or representation to be false, in whole or in part, by commission or omission;

(4)    Make or cause to be made a statement or representation for use in qualifying as a provider of a good or a service under the Oklahoma Medicaid Program, knowing the statement or representation to be false, in whole or in part, by commission or omission;

(5)    Charge any recipient or person acting on behalf of a recipient, money or other consideration in addition to or in excess of rates of remuneration established under the Oklahoma Medicaid Program;

(6)    Solicit or accept a benefit, pecuniary benefit, or kickback in connection with goods or services paid or claimed by a provider to be payable by the Oklahoma Medicaid Program; or

(7)    Having submitted a claim for or received payment for a good or a service under the Oklahoma Medicaid Program, fail to maintain or destroy such records as required by law or the rules of the Oklahoma Health Care Authority for a period of at least six (6) years following the date on which payment was received.

379.    Defendant violated 63 OKL. STAT. ANN. § 5053.1 and 56 OKL. STAT. ANN. § 1005 when it knowingly caused false claims to be made, used and presented to the State of Oklahoma by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

380.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

381.    The State of Oklahoma, by and through the Oklahoma Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

382.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Oklahoma.  Had the State of Oklahoma known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

383.    As a result of Defendant's violations of 63 OKL. STAT. ANN. § 5053.1 and 56 OKL. STAT. ANN. § 1005 the State of Oklahoma has been damaged.

384.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to 63 OKL. STAT. ANN. § 5053.2 on behalf of herself and the State of Oklahoma.

385.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Oklahoma in the operation of the Medicaid program.

**PRAYER AS TO COUNT XXXI**

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF OKLAHOMA:

(1)    Three times the amount of actual damages which the State of Oklahoma has sustained as a result of Defendant's fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,000 and not more than $10,000, for each false claim which Defendant caused to be presented to the

104

State of Oklahoma;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to 63 OKL. STAT. ANN. § 5053.4 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XXXII
## VIOLATIONS OF THE RHODE ISLAND STATE FALSE CLAIMS ACT
### R.I. GEN. LAWS § 9-1.1-1 *et seq.*

386.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

387.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Rhode Island to recover treble damages and civil penalties under the Rhode Island State False Claims Act, R.I. GEN. LAWS § 9-1.1-1 *et seq.*

388.    R.I. GEN. LAW § 9-1.1-3 provides liability for any person who, *inter alia*:

(1)    Knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval;

(2)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(3)    Conspires to commit a violation of [this section] . . .

389.    Defendant violated R.I. GEN. LAW § 9-1.1-3 when it knowingly caused false claims to be made, used and presented to the State of Rhode Island by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled.   Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

390.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

391.    The State of Rhode Island, by and through the Rhode Island Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

392.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Rhode Island.  Had the State of Rhode Island known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

393.    As a result of Defendant's violations of R.I. GEN. LAW § 9-1.1-3 the State of Rhode Island has been damaged.

394.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to R.I. GEN. LAW § 9-1.1-4(b) on behalf of herself and the State of Rhode Island.

395.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Rhode Island in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXXII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF RHODE ISLAND:

(1)    Three times the amount of actual damages which the State of Rhode Island has sustained as a result of Defendant's fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,500 and not more than $11,000, for each false claim which Defendant caused to be presented to the State of Rhode Island;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to R.I. GEN. LAW § 9-1.1-4(d) and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XXXIII
## VIOLATIONS OF THE TENNESSEE MEDICAID FALSE CLAIMS ACT
### TENN. CODE ANN. § 71-5-181 *et seq.*

396.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

397.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Tennessee to recover treble damages and civil penalties under the Tennessee Medicaid False Claims Act, TENN. CODE ANN. § 71-5-181 *et seq.*

398.    TENN. CODE ANN. § 71-5-182(a)(1) provides liability for any person who, *inter alia*:

(1)    Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval under the Medicaid program;

(2)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim under the Medicaid program;

(3)    Conspires to commit a violation of subdivision (a)(1)(A), (a)(1)(B), or (a)(1)(D); or

(4)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money, or property to the state, or knowingly conceals, or knowingly and improperly, avoids, or decreases an obligation to pay or transmit money or property to the state, relative to the Medicaid program

399.    Defendant violated TENN. CODE ANN. § 71-5-182(a)(1) when it knowingly caused false claims to be made, used and presented to the State of Tennessee by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled.  Defendant knew that these claims for

payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

400.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

401.    The State of Tennessee, by and through the Tennessee Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

402.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Tennessee. Had the State of Tennessee known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

403.    As a result of Defendant's violations of TENN. CODE ANN. § 71-5-182(a)(1), the State of Tennessee has been damaged.

404.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to TENN. CODE ANN. § 71-5-183(a)(1) on behalf of herself and the Tennessee.

405.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Tennessee in the operation of the Medicaid program.

## **PRAYER AS TO COUNT XXXIII**

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF TENNESSEE:

(1) Three times the amount of actual damages which the State of Tennessee has sustained as a result of Defendant's fraudulent and illegal practices;

(2) A civil penalty of not less than $5,000 and not more than $25,000, adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, in accordance with TENN. CODE ANN. § 71-5-182(a), for each false claim which Defendant caused to be presented to the State of Tennessee;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To RELATOR:

(1) A fair and reasonable amount allowed pursuant to TENN. CODE ANN. § 71-5-183(c) and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3) An award of statutory attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT XXXIV
## VIOLATIONS OF THE TEXAS MEDICAID FRAUD PREVENTION LAW
### TEX. HUM. RES. CODE ANN. § 36.001 *et seq.*

406.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

407.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Texas to recover treble damages and civil penalties under the Texas Medicaid Fraud Prevention Law, TEX. HUM. RES. CODE ANN. § 36.001 *et seq.*

408.    TEX. HUM. RES. CODE ANN. § 36.002 provides liability for any person who, *inter alia*:

(1)    knowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;

(2)    knowingly conceals or fails to disclose information that permits a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;

(3)    knowingly applies for and receives a benefit or payment on behalf of another person under the Medicaid program and converts any part of the benefit or payment to a use other than for the benefit of the person on whose behalf it was received;

(4)    except as authorized under the Medicaid program, knowingly pays, charges, solicits, accepts, or receives, in addition to an amount paid under the Medicaid program, a gift, money, a donation, or other consideration as a condition to the provision of a service or product or the continued provision of a service or product if the cost of the service or product is paid for, in whole or in part, under the Medicaid program;

(5)    conspires to commit a violation of [this section]

111

409.    Defendant violated TEX. HUM. RES. CODE ANN. § 36.002 when it knowingly caused false claims to be made, used and presented to the State of Texas by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

410.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

411.    The State of Texas, by and through the Texas Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

412.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Texas. Had the State of Texas known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

413.    As a result of Defendant's violations of TEX. HUM. RES. CODE ANN. § 36.002, the State of Texas has been damaged.

414.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to TEX. HUM. RES. CODE ANN. § 36.101 on behalf of herself and the State of Texas.

415. This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Texas in the operation of the Medicaid program.

**<u>PRAYER AS TO COUNT XXXIV</u>**

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF TEXAS:

(1) Three times the amount of actual damages which the State of Texas has sustained as a result of Defendant's fraudulent and illegal practices;

(2) A civil penalty as described in TEX. HUM. RES. CODE ANN. § 36.025(a)(3), for each false claim which Defendant caused to be presented to the state of Texas;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To RELATOR:

(1) A fair and reasonable amount allowed pursuant to TEX. HUM. RES. CODE ANN. § 36.110 and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3) An award of statutory attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT XXXV
## VIOLATIONS OF THE UTAH FALSE CLAIMS ACT
### Utah Code § 260-20 *et seq.*

416.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

417.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Utah to recover treble damages and civil penalties under the Utah False Claims Act, Utah Code § 260-20 *et seq.*

418.    Utah Code § 260-20-3 states, *inter alia*:

   (1)    A person may not make or cause to be made a false statement or false representation of a material fact in an application for medical benefits;

   (2)    A person may not make or cause to be made a false statement or false representation of a material fact for use in determining rights to a medical benefit…

419.    Utah Code § 260-20-6 provides that "[a] person may not enter into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another to obtain the payment or allowance of a false, fictitious, or fraudulent claim for a medical benefit."

420.    Utah Code § 260-20-7 states:

   (1)    A person may not make or present or cause to be made or presented to an employee or officer of the state a claim for a medical benefit:

(a) which is wholly or partially false, fictitious, or fraudulent;
(b) for services which were not rendered or for items or materials which were not delivered;
(c) which misrepresents the type, quality, or quantity of items or services rendered;
(d) representing charges at a higher rate than those charged by the provider to the general public;

114

(e) for items or services which the person or the provider knew were not medically necessary in accordance with professionally recognized standards;

(f) which has previously been paid;

(g) for services also covered by one or more private sources when the person or provider knew of the private sources without disclosing those sources on the claim; or

(h) where a provider:

(i) unbundles a product, procedure, or group of procedures usually and customarily provided or performed as a single billable product or procedure into artificial components or separate procedures; and

(ii) bills for each component of the product, procedure, or group of procedures:

(A) as if they had been provided or performed independently and at separate times; and

(B) the aggregate billing for the components exceeds the amount otherwise billable for the usual and customary single product or procedure.

(2) In addition to the prohibitions of Subsection (1), a person may not:

(a) fail to credit the state for payments received from other sources;

(b) recover or attempt to recover payment in violation of the provider agreement from:

(i) a recipient under a medical benefit program; or (ii) the recipient's family;

(c) falsify or alter with the intent to deceive, any report or document required by state or federal law, rule, or Medicaid provider agreement;

(d) retain any unauthorized payment as a result of acts described by this section; or

(e) aid or abet the commission of any act prohibited by this section.

421. Defendant violated UTAH CODE § 260-20 when it knowingly caused false claims to be made, used and presented to the State of Utah by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

422. Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

423.    The State of Utah by and through the Utah Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

424.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Utah.  Had the State of Utah known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

425.    As a result of Defendant's violations of UTAH CODE § 260-20, the State of Utah has been damaged.

426.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to UTAH CODE § 260-20 on behalf of herself and the State of Utah.

427.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Utah in the operation of the Medicaid program.

### PRAYER AS TO COUNT XXXV

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF UTAH:

(1)    Three times the amount of actual damages which the State of Utah has sustained as a result of Defendant's fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant presented or caused to be presented to the State of Utah;

(3)    Full and complete restitution to the state of all damages that the state sustained;

116

(4)    Any civil penalties as part of criminal and civil judgments;

(5)    Prejudgment interest; and

(6)    All costs incurred in bringing this action.

To RELATOR:

(5)    A fair and reasonable amount allowed pursuant to UTAH CODE § 260-20A-606 and/or any other applicable provision of law;

(6)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(7)    An award of statutory attorneys' fees and costs; and

(8)    Such further relief as this Court deems equitable and just.

## COUNT XXXVI
## VIOLATIONS OF THE VERMONT FALSE CLAIMS ACT
### VERMONT FALSE CLAIMS ACT 32 V.S.A. § 630 *et seq.*

428.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

429.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Vermont to recover treble damages and civil penalties under the Vermont False Claims Act, 32 V.S.A. § 630 *et seq.*

430.    32 V.S.A. § 631 states, *inter alia* (a) No person shall:

(1)    knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval;

(2)    knowingly make, use, or cause to be used, a false record or statement material to a false or fraudulent claim;

(3)    knowingly present, or cause to be presented, a claim that includes items or services resulting from a violation of 13 V.S.A. chapter 21 or section 1128B of the Social Security Act, 42 U.S.C. §§ 1320a-7b;

117

(4)    knowingly present, or cause to be presented, a claim that includes items or services for which the State could not receive payment from the federal government due to the operation of 42 U.S.C. § 1396b(s) because the claim includes designated health services (as defined in 42 U.S.C. § 1395nn(h)(6)) furnished to an individual on the basis of a referral that would result in the denial of payment under 42 U.S.C. chapter 7, subchapter XVIII (the "Medicare Program"), due to a violation of 42 U.S.C. § 1395nn;…

(8)    enter into a written agreement or contract with an official of the State or its agent knowing the information contained therein is false;

(9)    knowingly make, use or cause to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State;…

(10)    knowingly conceal or knowingly and improperly avoid or decrease an obligation to pay or transmit money or property to the State;

(11)    as a beneficiary of an inadvertent submission of a false claim to the State, or as a beneficiary of an overpayment from the State, and who subsequently discovers the falsity of the claim or the receipt of overpayment, fail to disclose the false claim or receipt of overpayment to the State by the later of: (A) a date which is 120 days after the date on which the false claim or receipt of overpayment was identified; or (B) the date any corresponding cost report is due, if applicable; or

(12)    conspire to commit a violation of this subsection.

431.    Defendant violated 32 V.S.A. § 631 when it knowingly caused false claims to be made, used and presented to the State of Vermont by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

432.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

433.    The State of Vermont by and through the Vermont Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

434.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Vermont. Had the State of Vermont known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

435.    As a result of Defendant's violations of 32 V.S.A. § 631, the State of Vermont has been damaged.

436.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to 32 V.S.A. § 633 on behalf of herself and the State of Vermont.

437.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Vermont in the operation of the Medicaid program.

## **PRAYER AS TO COUNT XXXV**

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF VERMONT:

(1)    A civil penalty of not less than $5,500 and not more than $11,000 for each act constituting a violation of subsection (a) of this section, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461);

(2)    three times the amount of damages that the State sustains because of the act of that person; and

(3)    the costs of the investigation and prosecution of such violation;

(4)    Prejudgment interest; and

(5)    All costs incurred in bringing this action.

To RELATOR:

(13)    A fair and reasonable amount allowed pursuant to 32 V.S.A. § 635 and/or any other applicable provision of law;

(14)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(15)    An award of statutory attorneys' fees and costs; and

(16)    Such further relief as this Court deems equitable and just.

## COUNT XXXVII
## VIOLATIONS OF THE VIRGINIA FRAUD AGAINST TAXPAYERS ACT
### VA. CODE ANN. § 8.01-216.1 *et seq.*

438.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

439.    This is a *qui tam* action brought by Elizabeth W. Moore and the Commonwealth of Virginia to recover treble damages and civil penalties under the Virginia Medicaid Fraud Prevention Law, VA. CODE ANN. § 8.01-216.1 *et seq.*

440.    VA. CODE ANN. § 8.01-216.3 provides liability for any person who, *inter alia*:

(1)    Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

120

(2)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(3)    Conspires to commit a violation of [this section]

441.    Defendant violated VA. CODE ANN. § 8.01-216.3 when it knowingly caused false claims to be made, used and presented to the Commonwealth of Virginia by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

442.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

443.    The Commonwealth of Virginia, by and through the Virginia Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

444.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the Commonwealth of Virginia. Had the Commonwealth of Virginia known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

445.    As a result of Defendant's violations of VA. CODE ANN. § 8.01-216.3, the Commonwealth of Virginia has been damaged.

446.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to VA. CODE ANN. § 8.01-216.5 on behalf of herself and the Commonwealth of Virginia.

447.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the Commonwealth of Virginia in the operation of the Medicaid program.

## **PRAYER AS TO COUNT XXXVII**

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the COMMONWEALTH OF VIRGINIA:

(1)    Three times the amount of actual damages which the Commonwealth of Virginia has sustained as a result of Defendant's fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant caused to be presented to the Commonwealth of Virginia;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to VA. CODE ANN. § 8.01-216.7 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

**COUNT XXXVIII**
**VIOLATIONS OF THE WASHINGTON STATE MEDICAID FRAUD**
**FALSE CLAIMS ACT**
**WASH. REV. CODE ANN. § 74.66.010 *et seq.***

448.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

449.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Washington to recover treble damages and civil penalties under the Washington State Medicaid Fraud False Claims Act, WASH. REV. CODE ANN. § 74.66.010 *et seq.*

450.    WASH. REV. CODE ANN. § 74.66.020 provides liability for any person who, *inter alia*:

    (1)    Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

    (2)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

    (3)    Conspires to commit one or more of the violations in this subsection. . .

451.    Defendant violated WASH. REV. CODE ANN. § 74.66.020 when it knowingly caused false claims to be made, used and presented to the State of Washington by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled.  Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

452.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

453.    The State of Washington, by and through the Washington Virginia Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

454.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Washington.  Had the State of Washington known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

455.    As a result of Defendant's violations of WASH. REV. CODE ANN. § 74.66.020, the State of Washington has been damaged.

456.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to WASH. REV. CODE ANN. § 74.66.050 on behalf of herself and the State of Washington.

457.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Washington in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXXVIII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF WASHINGTON:

    (1)    Three times the amount of actual damages which the State of Washington has sustained as a result of Defendant's fraudulent and illegal practices;

    (2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant caused to be presented to the State of Washington;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    A fair and reasonable amount allowed pursuant to WASH. REV. CODE ANN. § 74.66.070 and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

    (3)    An award of statutory attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

**COUNT XXXIX**
**VIOLATIONS OF THE WISCONSIN FALSE CLAIMS FOR MEDICAL**
**ASSISTANCE ACT**
**WIS. STAT. ANN. § 20.931 *et seq.***

458.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

459.    This is a *qui tam* action brought by Elizabeth W. Moore and the State of Wisconsin to recover treble damages and civil penalties under the Wisconsin State Medicaid Fraud False Claims Act, WIS. STAT. ANN. § 20.931 *et seq.*

460.    WIS. STAT. ANN. § 20.931(2) provides liability for any person who, *inter alia*:

(1)    Knowingly presents or causes to be presented to any officer, employee, or agent of this state a false claim for medical assistance.

(2)    Knowingly makes, uses, or causes to be made or used a false record or statement to obtain approval or payment of a false claim for medical assistance.

(3)    Conspires to defraud this state by obtaining allowance or payment of a false claim for medical assistance, or by knowingly making or using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Medical Assistance program.

461.    Defendant violated WIS. STAT. ANN. § 20.931(2) when it knowingly caused false claims to be made, used and presented to the State of Wisconsin by its violations of Federal and State laws by submitting false or fraudulent claims for payment for therapy services to which it was not entitled. Defendant knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or

126

falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

462.    Each claim presented or caused to be presented for reimbursement of the therapy services challenged herein represents a false or fraudulent claim for payment under the FCA.

463.    The State of Wisconsin, by and through the Wisconsin Medicaid program and other State health care programs, was unaware of Defendant's fraudulent and illegal practices and paid the claims submitted by Defendant in connection therewith.

464.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Wisconsin. Had the State of Wisconsin known that Defendant violated the laws cited herein, it would not have paid the claims submitted by Defendant.

465.    As a result of Defendant's violations of WIS. STAT. ANN. § 20.931(2), the State of Wisconsin has been damaged.

466.    Ms. Moore is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to WIS. STAT. ANN. § 20.931(5) on behalf of herself and the State of Wisconsin.

467.    This court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Wisconsin in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXXIX

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant, respectively:

To the STATE OF WISCONSIN:

    (1)    Three times the amount of actual damages which the State of Wisconsin has sustained as a result of Defendant's fraudulent and illegal practices;

    (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of Wisconsin;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    A fair and reasonable amount allowed pursuant to WIS. STAT. ANN. § 20.931(11) and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which Ms. Moore incurred in connection with this action;

    (3)    An award of statutory attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Relator demand trial by jury pursuant to Rule 38 of the Federal Rules of Civil

Procedure and the Seventh Amendment to the U.S. Constitution.

Respectfully submitted,

Andrew M. Beato (DC Bar 469097)
ABeato@steinmitchell.com
Jed Wulfekotte (DC Bar 977671)
*Admitted Pro Hac Vice*
JWulfekotte@steinmitchell.com
Melissa Sussman Fox (NY Bar 4507729)
*Admission pending*
MFox@steinmitchell.com
STEIN MITCHELL BEATO & MISSNER LLP
901 15th Street, N.W.
Suite 700
Washington, D.C. 20005
(202) 737-7777 (telephone)
(202) 296-8312 (fax)

***Counsel for Relator***

May 2, 2019

## CERTIFICATE OF SERVICE

I certify that on this 2nd day of May, a true and correct copy of the foregoing Complaint was filed under seal with the Clerk of Court. Service of this Complaint shall be made to the following parties listed below by U.S. Certified Mail, Return Receipt Requested:

| | |
|---|---|
| The Honorable William P. Barr<br>United States Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 | Pierre Armand<br>Li Yu<br>Assistant United States Attorneys<br>United States Attorney's Office<br>86 Chambers Street<br>Third Floor<br>New York, NY 10007 |
| Leslie Rutledge<br>Attorney General of Arkansas<br>323 Center Street, Suite 200<br>Little Rock, AR 72201 | Lloyd Warford<br>Director, MCFU<br>Medicaid Fraud Control Unit of Arkansas<br>Office of the Attorney General<br>323 Center Street, Suite 200<br>Little Rock, AR 72201 |
| Xavier Becarra<br>Attorney General of<br>California Department of Justice<br>Attn: False Claims Unit<br>P.O. Box 944255<br>Sacramento, CA 94244-2550<br>Attn: Brian V. Frankel<br>Supervising Deputy Attorney General<br>California MFCU | Saralyn M. Ang-Olson, Director, MFCU<br>Medicaid Fraud Control Unit of California<br>Office of the Attorney General<br>2329 Gateway Oaks Drive, Suite 200<br>Sacramento, CA 95833 |
| Phil Weiser, Attorney General<br>Colorado Department of Law<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway, 10th Floor<br>Denver, CO 80203 | Robert Booth, Director, MFCU<br>Office of the Attorney General<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway, 9th Floor<br>Denver, CO 80203 |
| William Tong, Attorney General<br>55 Elm Street<br>Hartford, CT 06106-1774 | Christopher Godialis, Director, MFCU<br>Medicaid Fraud Control Unit<br>Office of the Chief State's Attorney<br>300 Corporate Place<br>Rocky Hill, CT 06067 |

| | |
|---|---|
| Kathy Jennings, Attorney General<br>Delaware Department of Justice<br>Carvel State Office Bldg.<br>820 N. French St.<br>Wilmington, DE 19801 | Kate Keller, Director, MFCU<br>Medicaid Fraud Control Unit of Delaware<br>Office of the Attorney General<br>820 N. French St., 5th Floor<br>Wilmington, DE 19801 |
| Karl A. Racine<br>Attorney General for the District of Columbia<br>441 4th Street, NW<br>Washington, DC 20001 | Marcus A. Weeks, Director, MFCU<br>Medicaid Fraud Control Unit of D.C.<br>Office of D.C. Inspector General<br>717 14th Street NW, Suite 430<br>Washington, DC 20005 |
| Ashley Moody<br>Attorney General for the State of Florida<br>PL-01, The Capitol<br>Tallahassee, FL 32399-1050<br><br>Jimmy Patronis, Chief Financial Officer<br>Florida Department of Financial Services<br>200 East Gaines Street<br>Tallahassee, FL 32399 | James D. Varnado, Director, MFCU<br>Medicaid Fraud Control Unit of Florida<br>Office of the Attorney General<br>PL-01, The Capitol<br>Tallahassee, FL 32399-1050 |
| Christopher Carr<br>Georgia Attorney General<br>40 Capitol Square SW<br>Atlanta, GA 30334 | Van Pearlberg, Director, MFCU<br>Medicaid Fraud Control Unit of Georgia<br>200 Piedmont Ave., SE<br>West Tower, 19th Floor<br>Atlanta, GA 30334 |
| Clare E. Connors, Attorney General<br>Department of the Attorney General<br>425 Queen Street<br>Honolulu, HI 96813 | Dawn S. Shigezawa, Director, MFCU<br>Medicaid Fraud Control Unit of Hawaii<br>Department of the Attorney General<br>727 Richards Street, Suite 402<br>Honolulu, HI 96813 |
| Kwame Raoul<br>Attorney General for the State of Illinois<br>James R. Thompson Center<br>100 W. Randolph Street<br>Chicago, IL 60601 | David Roll, Acting Director, MFCU<br>Medicaid Fraud Control Bureau<br>801 South 7th Street, Suite 500-A<br>Springfield, IL 62703 |
| Curtis Hill, Attorney General<br>Office of the Indiana Attorney General<br>Indiana Government Center South<br>302 W. Washington St., 5th Floor<br>Indianapolis, IN 46204 | Matthew Whitmire, Director, MFCU<br>Medicaid Fraud Control Unit of Indiana<br>Office of the Attorney General<br>8005 Castleway Drive<br>Indianapolis, IN 46250-1946 |

| | |
|---|---|
| Tom Miller, Attorney General<br>Office of the Attorney General of Iowa<br>Hoover Building<br>1305 E. Walnut Street<br>Des Moines, IA 50319 | Jeremy Ingrim, Director, MFCU<br>Medicaid Fraud Control Unit of Iowa<br>Department of Inspections and Appeals<br>3rd Floor, Lucas State Office Building<br>321 E. 12th Street<br>Des Moines, IA 50319 |
| Jeff Landry, Attorney General<br>1885 N. Third Street<br>Baton Rouge, LA 70802 | Jeff W. Traylor, Director, MFCU<br>Medicaid Fraud Control Unit of Louisiana<br>Office of the Attorney General<br>1885 N. 3rd Street<br>Baton Rouge, LA 70802 |
| Brian Frosh, Attorney General<br>200 St. Paul Place<br>Baltimore, MD 21202 | Strider L. Dickson, Director, MFCU<br>Medicaid Fraud Control Unit of Maryland<br>Office of the Attorney General<br>200 St. Paul Place, 18th Floor<br>Baltimore, MD 21202 |
| Maura Healey, Attorney General<br>Commonwealth of Massachusetts<br>One Ashburton Place<br>Room 1813<br>Boston, MA 02108-1518 | Toby Unger, Director, MFCU<br>Medicaid Fraud Control Unit of Massachusetts<br>Office of the Attorney General<br>One Ashburton Place, Room 1813<br>Boston, MA 02108-1698 |
| Dana Nessel, Attorney General<br>Attorney General for the State of Michigan<br>G. Mennen Williams Building, 7th Floor<br>525 W. Ottawa Street<br>P.O. Box 30212<br>Lansing, MI 48909 | David Tanay, Director, MFCU<br>Medicaid Fraud Control Unit of Michigan<br>Office of the Attorney General<br>2860 Eyde Parkway<br>East Lansing, MI 48823 |
| Keith Ellison, Attorney General<br>Minnesota Attorney General<br>445 Minnesota Street<br>Suite 1400<br>St. Paul, MN 55101-2131 | Kirsi L. Poupore, Director, MFCU<br>Office of the Attorney General of Minnesota<br>445 Minnesota Street<br>900 Bremer Tower<br>St. Paul, MN 55101-2219 |
| Tim Fox<br>Attorney General for the State of Montana<br>Justice Bldg., Third Floor<br>215 N. Sanders<br>P.O. Box 201401<br>Helena, MT 59620-1401 | Debrah Fosket, Director, MFCU<br>Medicaid Fraud Control Unit of Montana<br>Division of Criminal Investigation<br>2225 11th Avenue<br>P.O. Box 201417<br>Helena, MT 59620-1417 |

| | |
|---|---|
| Aaron Ford, Attorney General<br>Office of the Attorney General<br>100 N. Carson St.<br>Carson City, NV 89701 | Mark N. Kemberling,<br>Director, MFCU<br>Medicaid Fraud Control Unit of Nevada<br>Office of the Attorney General<br>555 East Washington, Ave., Ste. 3900<br>Las Vegas, NV 89101 |
| Gordon MacDonald, Attorney General<br>NH Department of Justice<br>33 Capitol Street<br>Concord, NH 03301 | Sean P. Gill, Director, MFCU<br>Medicaid Fraud Control Unit of New Hampshire<br>Office of the Attorney General<br>33 Capitol Street<br>Concord, NH 03301 |
| Gurbir S. Grewal, Attorney General<br>RJ Hughes Justice Complex<br>25 Market Street, Box 080<br>Trenton, NJ 08625-0080 | Peter Sepulveda, Director, MFCU<br>Medicaid Fraud Control Unit of New Jersey<br>Office of the Attorney General<br>One Apollo Drive<br>Whippany, NJ 07981 |
| Hector Balderas, Attorney General<br>Office of the New Mexico Attorney General<br>408 Galisteo Street<br>Villagra Building<br>Santa Fe, NM 87501 | John Grubesic, Acting Director<br>Medicaid Fraud Control Unit of New Mexico<br>Office of the Attorney General<br>201 3rd Street N.W., Suite 300<br>Albuquerque, NM 87102 |
| Letitia James, Attorney General<br>Office of the New York Attorney General<br>Attn: Managing Clerk's Office<br>28 Liberty Street, 16th Floor<br>New York, NY 10005 | Amy Held, Director, MFCU<br>Medicaid Fraud Control Unit of New York<br>Office of the Attorney General<br>28 Liberty Street, 13th Floor<br>New York, NY 10005 |
| Josh Stein, Attorney General<br>9001 Mail Service Center<br>Raleigh, NC 27699-9001 | F. Edward Kirby, Jr., Director, MFCU<br>Medicaid Fraud Control Unit of North Carolina<br>Office of the Attorney General<br>5505 Creedmoor Road, Suite 300<br>Raleigh, NC 27612 |
| Mike Hunter<br>Attorney General for the State of Oklahoma<br>313 N.E. 21st Street<br>Oklahoma City, OK 73105 | Ms. Mykel Fry, Director, MFCU<br>Medicaid Fraud Control Unit of Oklahoma<br>Office of the Attorney General<br>313 N.E. 21st Street<br>Oklahoma City, OK 73105 |

| | |
|---|---|
| Peter Neronha<br>Attorney General of Rhode Island<br>Office of the Attorney General<br>150 South Main Street<br>Providence, RI 02903 | James F. Dube<br>Director, MFCU<br>Medicaid Fraud Control Unit of Rhode Island<br>Office of the Attorney General<br>150 South Main Street<br>Providence, RI 02903 |
| Herbert Slattery, III<br>Attorney General and Reporter<br>Office of the Attorney General and Reporter<br>P.O. Box 20207<br>Nashville, TN 37202-0207 | Mike Cox, Director, MFCU<br>Medicaid Fraud Control Unit of Tennessee<br>Bureau of Investigation<br>901 R.S. Gass Boulevard<br>Nashville, TN 37216-2639 |
| Ken Paxton<br>Attorney General for the State of Texas<br>Attn: Susan Miller<br>300 W. 15th Street<br>Austin, TX 78701<br><br>Mailing Address:<br>P.O. Box 12548<br>Austin, TX 78711-2648 | Stormy Kelly, Director, MFCU<br>Medicaid Fraud Control Unit of Texas<br>Office of the Attorney General<br>6330 E. 290 SVRD WB, Suite 250<br>Austin, TX 78723 |
| Sean Reyes, Attorney General<br>Office of the Attorney General<br>Utah State Capital Complex<br>350 North State Street, Suite 230<br>Salt Lake City, UT 84114-2320 | Robert E. Steed, Director, MFCU<br>Medicaid Fraud Control Unit of Utah<br>Office of the Attorney General<br>5272 College Drive, Suite 300<br>Salt Lake City, UT 84123 |
| T.J. Donovan, Attorney General<br>109 State St.<br>Montpelier, VT 05609-1001 | Linda Purdy – Director, MFCU<br>Medicaid Fraud and Residential Abuse Unit<br>Office of the Attorney General of Vermont<br>109 State Street<br>Montpelier, VT 05609-1001 |
| Mark Herring, Attorney General<br>Office of the Attorney General<br>202 North Ninth Street<br>Richmond, VA 23219 | Randall L. Clouse, Director, MFCU<br>Medicaid Fraud Control Unit of Virginia<br>Office of the Attorney General<br>202 North Ninth Street<br>Richmond, VA 23219 |

134

| Bob Ferguson, Attorney General<br>c/o Carrie L. Bashaw, Senior Counsel<br>WA Medical Fraud Control Unit<br>2425 Bristol Ct SW<br>P.O. Box 40114<br>Olympia, WA 98504 | Larissa Payne, Director, MFCU<br>Medicaid Fraud Control Unit of Washington<br>Office of the Attorney General<br>P.O. Box 40114<br>Olympia, WA 98504-0114 |
| --- | --- |
| Josh Kaul<br>Attorney General of Wisconsin<br>State Capital, Suite 114 E<br>Madison, WI 53702 | Francis Sullivan<br>Medicaid Fraud Control Unit of Wisconsin<br>Office of the Attorney General<br>17 W. Main Street<br>Madison, WI 53703 |

Andrew M. Beato
Jed Wulfekotte
Melissa Sussman Fox

135